# Richmond

## John T. Carter and E. P. Macemore v. Commonwealth of Virginia.

March 8, 1943.

Record No. 2668.

Present, Campbell, C. J., and Hudgins, Gregory, Browning, Eggleston and Spratley, JJ.

The opinion states the case.

*Weaver, Armstrong & Marshall* and *Perkins, Battle & Minor,* for the plaintiffs in error.

*Abram P. Staples, Attorney General,* and *G. Stanley Clarke, Assistant Attorney General,* for the Commonwealth.

SPRATLEY, J., delivered the opinion of the court.

This is a companion case to *Earl Dickerson, W. O. Page, and One 1939 Ford Truck, etc.* v. *Commonwealth of Virginia,* post, page 313, decided this day.

The evidence in the two cases is somewhat different, but the principal assignments of error are based upon the same grounds. This case, however, has certain additional assign-

ments of error based upon the specific offenses alleged against the appellants.

John T. Carter and E. P. Macemore were on September 14, 1942, jointly convicted of unlawfully transporting whiskey within, into and through Virginia. The specific charges against them were that the bill of lading for their whiskey shipment showed that it was being transported to a person who did not have a legal right to receive it at the point of destination shown thereon, as required by section 44 of the regulations of the A. B. C. Board of Virginia; that the bill of lading did not specify the route to be travelled by their truck in Virginia, as required by section 42 of the regulations; and that the appellants had posted no bond.

The case was tried by the court without the intervention of a jury upon an agreed stipulation of facts. The facts may be briefly stated as follows:

On May 20, 1942, the appellant received from a wholesale liquor dealer in Dorsey, Maryland, a shipment of 168 gallons of whiskey consigned to R. M. Williard, at Thomasville, North Carolina. The whiskey was loaded on a truck, and immediately driven into Virginia by the appellants. Carter and Macemore said they intended to transport it through Virginia into North Carolina. They were apprehended and arrested in Rappahannock County, Virginia. They produced a bill of lading showing the correct amount of whiskey contained in the shipment, and disclosing the consignee to be a resident of North Carolina. Under the laws of North Carolina, the consignee could not lawfully receive the whiskey at its destination. The bill of lading specified no route for the truck to follow while in Virginia.

The truck was registered in the name of Healton Miller, a resident of North Carolina, who had posted, on March 26, 1942, a bond as required by section 42 of the Regulations of the Virginia Alcoholic Beverage Control Board; but the Board had notified Miller on May 1, 1942, of the cancellation of the bond and demanded the return of the certificate issued thereon. The bond had been cancelled upon information that Miller had the reputation of being a

bootlegger in North Carolina. There was no evidence that Miller had ever violated the laws of Virginia.

Virginia Code, 1942, (Michie) section 4675 (5) and (49a) and section 44 of the Regulations of the Virginia Alcoholic Beverage Control Board have been set out in the companion case. Section 42 of the said regulations reads as follows:

"Section 42. The Transportation of Alcoholic Beverages as Defined in the Virginia Alcoholic Beverage Control Act, as Amended, Within, Into, or Through the State of Virginia in Quantities in Excess of One Gallon.

"Before any person shall transport any alcoholic beverages within, into, or through the State of Virginia, such person shall post with the Virginia Alcoholic Beverage Control Board a bond with approved surety, payable to the Commonwealth of Virginia, in the penalty of One Thousand Dollars, upon condition that such person will not unlawfully transport and/or deliver any alcoholic beverages within, into, or through the State of Virginia, and evidence that the required bond has been posted shall accompany the alcoholic beverages at all times during transportation.

"Provided, however, that no such bond shall be required of any person licensed under the Virginia Alcoholic Beverage Control Act, as amended, to sell alcoholic beverages when such alcoholic beverages are being transported in a vehicle belonging to the licensee.

"Provided further that no such bond shall be required of any person transporting wine and/or beer purchased from persons licensed under the provisions of the Virginia Alcoholic Beverage Control Act, as amended, or those alcoholic beverages which may be manufactured and sold without any license under the Virginia Alcoholic Beverage Control Act, as amended."

It is here contended that the Virginia Alcoholic Beverage Control Act is unconstitutional, in that (1) the legislature did not have the power to delegate to the Alcoholic Beverage Control Board the right to adopt regulations having the force and effect of law; (2) that the Board did not have

the authority to adopt sections 42 and 44 of its Regulations; (3) that the above sections are unconstitutional, in that they violate Article 1, section 8, clause 3 of the Constitution of the United States by imposing a burden upon interstate commerce; and (4) that the cancellation of the bond of Healton Miller was not a valid action under the power conferred upon the Board and was violative of the rights of the appellants under the commerce clause of the Federal Constitution.

What we have said in *Earl Dickerson, W. O. Page, and One 1939 Ford Truck, etc. v. Commonwealth, supra,* applies and controls here upon similar questions raised by the appellants.

The bond required under section 42 of the regulations is for the purpose of insuring the fitness and integrity of the carrier of the liquor. It is evidence of his responsibility and a guaranty of lawful transportation. It confines the transportation to a channel deemed trustworthy.

The requirement that the bill of lading or other memorandum of shipment shall designate the route to be travelled in Virginia enables agents of the Board and the State police to inspect the shipment in transit, to keep a watch over its movements, and to discourage and prevent its unlawful delivery or distribution within the State. It is but an incident of local regulation over a subject which, if left to unrestrained movement, has a tendency to affect the public safety and welfare.

Both requirements are reasonable aids in preventing the unlawful distribution and sale of alcoholic beverages in the State. They are consistent with the provisions and purpose of the Alcoholic Beverage Control Act to regulate and control the liquor traffic and hold it within confined limits. Neither requirement forbids or precludes the lawful transportation of ardent spirits in interstate commerce. Each tends to make regulation effective.

See *Ziffrin v. Reeves,* 308 U. S. 132, 60 S. Ct. 163, 84 L. Ed. 128, where a State statute limiting transportation to specified common carriers was upheld, and *Duckworth v.*

*Arkansas,* 314 U. S. 390, 62 S. Ct. 311, 86 L. Ed. 261, 138 A. L. R. 1144, where a statute requiring a permit for transporting liquor was declared valid.

Miller, the only person who had the right to challenge the cancellation of his bond, is not a party to this proceeding. There is no evidence that he protested the action of the Board. It does not appear from the record what connection he had with the transportation of the whiskey, nor whether Carter and Macemore were his agents. We are not told whether the latter were using the truck with or without Miller's knowledge, or what action, if any, he may have taken to protect his property rights in the truck.

The bond is conditioned that the carrier will not engage in the unlawful transportation of alcoholic spirits within, into or through the State of Virginia. Evidence of its posting with the Board constituted a permit,—a permit to lawfully transport. Cancelled or uncancelled, it gives no one a permit for unlawful transportation.

Whether or not the appellants might have given an acceptable bond for interstate transportation through Virginia is not an issue here. If such a bond had been given, it would have permitted lawful transportation, but it would have afforded no defense to an unlawful carriage.

The requirement for the posting of a bond is a regulation of a police nature. The Board having the authority to require the bond, under the police powers conferred upon it by the A. B. C. Act, had the right to cancel it with or without notice under the same power if, in the exercise of a reasonable discretion, it was satisfied that it was being used or about to be used against the public safety and welfare.

It is not to be presumed that the authority of the A. B. C. Board will be arbitrarily used; but in the event that it is abused, a person feeling himself aggrieved may seek judicial relief in the courts.

In support of their contention that the regulations of the Board impose a burden upon interstate commerce, the appellants cite the recent case of *Barnett* v. *State* (Ala), 9 So.

(2d) 267. The Alabama court did not have before it for decision statutes or regulations involving the questions here raised. In that case, it was held that the Twenty-first Amendment to the Federal Constitution did not authorize the seizure and condemnation of liquors and transporting vehicles under existing Alabama statutes, where such liquors were being transported through Alabama to another State for disposition in violation of the laws of the latter State. In the case before us the prosecution of the appellants is based upon specific statutes of Virginia.

The judgment of the trial court is affirmed.

*Affirmed.*