264 F.2d 731
 UNITED STATES of America
v.
ERIE COUNTY MALT BEVERAGE DISTRIBUTORS ASSOCIATION, Erie County I. D. Malt Beverage Association, Also Known as Erie County Importing Malt Beverage Distributors Association, Kahkwa Beer Company, George B. Barber, Robert E. Carney, Ralph A. Deck, Anthony D. Marinelli, Harold J. Mulvihill and Louis Sawicki; George B. Barber, Appellant.
 No. 12627.
 United States Court of Appeals Third Circuit.
 Argued December 15, 1958.
 Decided March 18, 1959.
 
 Thomas W. Barber, Erie, Pa. (Joseph C. Barber, Erie, Pa., William Austin Meehan (of Meehan, Neil & Richette), Philadelphia, Pa., on the brief), for appellant.
 William L. Maher, Antitrust Division, Dept. of Justice, Philadelphia, Pa. (Victor R. Hansen, Asst. Atty. Gen., Donald G. Balthis, Morton M. Fine, John E. Sarbaugh, James P. Tofani, Attys. Dept. of Justice, Antitrust Division, Philadelphia, Pa., on the brief), for appellee.
 Before BIGGS, Chief Judge, and McLAUGHLIN and HASTIE, Circuit Judges.
 BIGGS, Chief Judge.
 George B. Barber, the defendant-appellant, together with others as named in the caption, was indicted on March 19, 1956 for a violation of Section 1 of the Sherman Act, 15 U.S.C.A. § 1. The United States asserts that the defendants have engaged in a conspiracy to suppress and eliminate competition in the sale of malt beverages to home consumers in Erie County, Pennsylvania, by fixing case lot prices, mark-ups, and delivery charges, and enforcing the foregoing by boycott. All the defendants, including Barber, were found guilty. A motion for arrest of judgment was made and denied.[1] Barber has appealed. The appeal raises but one question substantially as incorporated in the motion in arrest of judgment.[2]
 In brief Barber asserts that the Twenty-first Amendment to the Constitution of the United States[3] ousts the United States of jurisdiction to prosecute restraints of interstate trade or commerce in malt beverages. Intoxicating liquors have acquired special status as articles of commerce because of a very long legal history dealing with numerous phases of their regulation by state police power as well as by the federal government. Since the effective date of the Twenty-first Amendment, December 5, 1933, the power to regulate intoxicating liquors as articles of commerce has been distributed between the state and federal governments and has depended to some degree upon the complementary effects of state and federal laws. But soon after the Amendment became effective the Supreme Court held that the Amendment did not give to the States complete and exclusive control over commerce in intoxicating liquors, unlimited by the Commerce Clause, art. 1, § 8, cl. 3, and that some power to regulate and control that commerce remained in Congress. Jameson & Co. v. Morgenthau, 1939, 307 U.S. 171, 59 S.Ct. 804, 83 L.Ed. 1189.[4] The quantum of power remaining in Congress to legislate in respect to commerce in intoxicating liquors following the amendment has never been precisely defined but has remained to be marked out by judicial decision. Carter v. Commonwealth of Virginia, 1944, 321 U.S. 131, 138, 64 S.Ct. 464, 88 L.Ed. 605, concurring opinion of Mr. Justice Black.
 
 
 1
 This residuum of power remaining in the federal government was dealt with by the Supreme Court in United States v. Frankfort Distilleries, 1945, 324 U.S. 293, 299-300, 65 S.Ct. 661, 89 L.Ed. 951. In this case liquor wholesalers in Colorado who controlled 75% of spiritous liquors and wines annually shipped into Colorado were indicted under Section 1 of the Sherman Act, 15 U.S.C.A. § 1, and it was contended by them, relying on the Miller-Tydings Amendment to the Sherman Act, 50 Stat. 693, and on the Colorado "Fair Trade" Act, Session Laws of Colorado, 1937, chapter 146, as defenses, that the Twenty-first Amendment prohibited the prosecution. The Supreme Court concluded that the Sherman Act was not being enforced under the circumstances of the cited case in such a way as to conflict with the law of Colorado and reversed the Court of Appeals for the Tenth Circuit, 144 F.2d 824. The Supreme Court, by Mr. Justice Black, said [324 U.S. 293, 65 S.Ct. 664], "We * * * do not have here a case in which the Sherman Act is applied to defeat the policy of the state. That would raise questions of moment which need not be decided until they are presented."
 
 
 2
 In a concurring opinion Mr. Justice Frankfurter laid emphasis on the fact that the Commerce Clause is subordinate to the exercise of state power under the Twenty-first Amendment and that the Sherman Act, since it derives its authority from the Commerce Clause can have no greater potency than the Commerce Clause itself. "And so", said Mr. Justice Frankfurter, supra, 324 U.S. at page 301, 65 S.Ct. at page 665, "[T]he validity of a charge under the Sherman law relating to intoxicating liquors depends upon the utilization by a State of its constitutional power under the Twenty-first Amendment." The appellant in the case at bar contends that we are faced with circumstances which compel the conclusion that the Sherman Act does interfere with the purposes of the Pennsylvania law relating to intoxicating liquors and that the entire field has been preempted by Commonwealth legislation. We cannot agree.
 
 
 3
 Immediately following the adoption of the Twenty-first Amendment to the Constitution of the United States the Legislature of the Commonwealth of Pennsylvania enacted statutes which covered many facets of the traffic in Pennsylvania in spiritous liquors and in malt and brewed beverages. These are set out in some detail in the brief of the defendant Barber but need not be recounted here for the Pennsylvania Liquor Code, April 12, 1951, P.L. 90, 47 P.S.Pa. § 1-101 et seq., is now in force. Whatever may be the force of the Liquor Code in respect to spiritous liquors, it is clear that the Code permits the functioning of a private entrepreneurial system in the sale and distribution of malt and brewed beverages by the authorization of the issuance of licensing to private persons for engaging in the business of purchasing and distributing such beverages. See Melrose Distilleries, Inc. v. United States, 4 Cir., 1958, 258 F.2d 726, 729, certiorari granted on another issue, 1958, 358 U.S. 878, 79 S.Ct. 125, 3 L.Ed.2d 109. No decision of the Pennsylvania Courts looks in an opposite direction. There is nothing in the law of Pennsylvania, decisional or otherwise, which authorizes the fixing of prices, uniform closing hours, save for week-end closings, 47 P.S.Pa. § 4-492(4), or the enforcement of group action by boycott as charged and proved here.
 
 
 4
 The judgment of the court below will be affirmed.
 
 
 
 Notes:
 
 
 [1]
 D.C.W.D.Pa.1957, 23 F.R.D 675
 
 
 [2]
 In pertinent part as follows:
 "The defendants and each of them move the Court to arrest the judgment for the following reasons:
 * * * * *
 "5. When the malt beverages brewed outside Pennsylvania arrived at the warehouse of the respective defendants in the County of Erie, Pennsylvania, the Interstate transactions in relation to said beverages ended, and the activities of the defendants or any of them thereafter were not a subject of Congressional regulations."
 The defendants had previously filed a motion to quash the indictment based on similar grounds. This motion was denied.
 
 
 [3]
 The Amendment provides: "Section 1. The eighteenth article of amendment to the Constitution of the United States is hereby repealed
 "Sec. 2. The transportation or importation into any State, Territory, or possession of the United States for delivery or use therein of intoxicating liquors, in violation of the laws thereof, is hereby prohibited."
 
 
 [4]
 In the cited case the commerce involved was foreign commerce; viz., the importation of Irish whiskey