Mr. Justice Black,
with whom Mr. Justice Goldberg joins,
dissenting.
This case, like Hostetter v. Idlewild Bon Voyage Liquor Corp., also decided today, ante, p. 324, deprives the States of a large part of the power which I think the Twenty-first Amendment gives them to regulate the liquor business by taxation or otherwise. That Amendment provides in part that “The transportation or importation into any State ... for delivery or use therein of intoxicating *479 liquors, in violation of the laws thereof, is hereby prohibited.” Kentucky requires persons transporting distilled spirits into the State from without the State to obtain a permit and pay a tax of 10 cents per gallon. This Kentucky tax as applied to liquors imported into Kentucky from another State is, since the Twenty-first Amendment, unquestionably valid against objections based on either the Commerce or Equal Protection Clauses. Such was the holding of this Court, soon after the Amendment’s adoption, in State Board v. Young’s Market Co., 299 U. S. 59 (1936), where the Court held that a State is free under the Twenty-first Amendment to levy a “heavy importation fee” on beer brought into the State. In that case, the beer was imported from Missouri and Wisconsin, but there is nothing in the Court’s opinion to suggest that the holding would have been different if the beer had come from, say, Canada. See Indianapolis Brewing Co. v. Liquor Control Comm’n, 305 U. S. 391 (1939); Joseph S. Finch & Co. v. McKittrick, 305 U. S. 395 (1939). Yet here, because the liquors Kentucky has taxed are imports from Scotland rather than imports from another part of the United States, the Court holds that the Kentucky tax is barred because Art. I, § 10, cl. 2, of the Constitution provides that “No State shall, without the Consent of the Congress, lay any Imposts or Duties on Imports or Exports, except what may be absolutely necessary for executing it’s inspection Laws . . . .” I think this clause forbidding a State to tax imports from abroad no more limits a State’s right to tax intoxicating liquors than does the Commerce Clause. In the first place, the Commerce Clause applies to foreign and interstate commerce alike. Further, the clause against taxing imports is general like the Commerce Clause itself. Section 2 of the Twenty-first Amendment, by contrast, is not general in its application. It was adopted with one specific object: to give the States un *480 fettered power to regulate intoxicating liquors. State Board v. Young’s Market Co., supra, and our other cases expressly held the State’s power not to be limited either by the Commerce Clause or by the Equal Protection Clause. Surely the Export-Import Clause is no more exalted and no more worthy to be excepted from the Twenty-first Amendment than are the Commerce and Equal Protection Clauses. It seems a trifle odd to hold that an Amendment adopted in 1933 in specific terms to meet a specific twentieth-century problem must yield to a provision written in 1787 to meet a more general, although no less important, problem. Since the Twenty-first Amendment was designed to empower the States to tax “intoxicating liquors” imported into the States, I cannot take it upon myself to say that a State can tax liquors made in this country but not those made in Scotland — a distinction not suggested by the Amendment’s language or its history. The Amendment, after all, does not talk about “foreign” liquors or “domestic” liquors; it simply speaks of “liquors” — all liquors, whatever their origin. The purpose of the Amendment was to give States power to regulate, by taxation or otherwise, all liquors within their boundaries. To free from state taxation liquors imported from abroad is to place States at the mercy of liquor importers who want to use a State as a storage place for distribution of their imports. It de-r prives a State of the power the Twenty-first Amendment gives each State — that is, plenary power to decide which liquors shall be admitted into the State for storage, sale, or distribution within the State. A State may choose to have wine only, beer only, Scotch only, bourbon only, or none of these. As the Court said in State Board v. Young’s Market Co., supra, at 63, a State can “either prohibit all competing importations, or discourage importation by laying a heavy impost, or channelize desired importations . . . .” Although I was brought up to believe *481 that Scotch whisky would need a tax preference to survive in competition with Kentucky bourbon, I never understood the Constitution to require a State to give such preference. (My dissenting Brother asks me to say that this statement does not necessarily represent his views on the respective merits of Scotch and bourbon.)
As recently as 1958, this Court reviewed the Texas conviction of a man who had brought some bottles of rum into Texas from Mexico on his way to his home in North Carolina, and had refused to pay Texas alcoholic beverage taxes when asked to do so. Over objections that this tax violated both the Export-Import Clause and the Commerce Clause, this Court, in a three-line per curiam opinion, unanimously affirmed the conviction. Gordon v. Texas, 355 U. S. 369 (1958). Briefs filed by Texas in that case had argued that the tax was really one on “possession,” not on “importation,” but these labels cannot obscure the fact that both in Gordon and in this case the same conduct was involved: the physical importation of liquor from abroad into the State, at which point the State's interest in regulating or taxing the liquor came into play. Gordon did not — just as the Twenty-first Amendment does not — draw nice distinctions about where imported liquor comes from. Nor is there one word in the debates in Congress preceding the adoption of the Amendment to suggest that the backers of the Amendment, in seeking to give the States full and unhampered power over liquor traffic, thought liquor coming from abroad was less of a problem than domestic liquor or should be treated at all differently.
A final word concerning the Court’s statement that “To sustain the tax which Kentucky has imposed in this case would require nothing short of squarely holding that the Twenty-first Amendment has completely repealed the Export-Import Clause so far as intoxicants are concerned.” Ante, p. 345. This, I think, is not correct. What the *482 Twenty-first Amendment does mean, I believe, is that whenever liquor imported from anywhere outside the State, including foreign countries, is transported physically into a State, there to come to rest to be stored for sale and distribution, it then and there becomes a state problem and like all other liquors is subject to state laws of all kinds. It cannot be treated as if it were liquor passing straight through the State — although even then the State would have the power to impose regulations to prevent diversions or other possible evils. See Carter v. Virginia, 321 U. S. 131 (1944). Whatever may have been the virtue or the constitutional soundness of the fiction that articles imported from abroad are “imports” so long as they remain “in their original packages,” see Hooven & Allison Co. v. Evatt, 324 U. S. 652 (1945), and dissent at 686-691, that doctrine was expressly attacked in the Senate debate on the Twenty-first Amendment as rendering the States “powerless to protect themselves against the importation of liquor into the States.”* 76 Cong. Rec. 4171 (1933): The Amendment was meant to bury that obstacle to state power over liquor, and the doctrine of “original package,” which the Senate consciously rejected, should not be revived after 30 years' interment, once again to be used to deprive States of power the Senate so clearly wanted them to have and the people so clearly granted them. Section 2 of the Amendment, born of long and bitter experience in the field of liquor regulation, should not be frustrated by us.
I would uphold the Kentucky tax.

 “The State of Iowa passed a prohibition law prohibiting the manufacture or sale of intoxicating liquors, except under certain specifications made. The Supreme Court in the case of Leisy v. Hardin (135 U. S. 100) held the law unconstitutional, in so far as it applied to the sale by the importer in the original package or keg. . . .
“The States therefore were powerless to protect themselves against the importation of liquor into the States.” 76 Cong. Rec. 4171 (1933) (Senator Borah).