QUALITY BRANDS, INC., Plaintiff,

v.

Marion S. BARRY, Jr., et al.,
Defendants.

Civ. A. No. 88–1999.

United States District Court,
District of Columbia.

June 27, 1989.

Charles R. Work, Robert F. Sagle, Nathalie F.P. Gilfoyle, Daniel C. Beckhard, McDermott, Will & Emery, Washington, D.C., for plaintiff.

Wayne C. Witkowski, Asst. Corp. Counsel, Washington, D.C., for defendants.

## MEMORANDUM AND ORDER

REVERCOMB, District Judge.

Plaintiff Quality Brands Inc. has moved for summary judgment on its claim for a declaratory judgment that the District of Columbia's Wholesale Liquor Industry Storage Act of 1986 ("the Act") is unconstitutional, and it seeks an injunction of enforcement of the Act. Defendant has filed a cross-motion to dismiss, or in the alternative for summary judgment. Quality Brands argues that the Act, which prohibits sale in the District of Columbia of liquor which is stored outside the District, violates the Commerce Clause because it discriminates against businesses using out-of-state facilities and labor in order to benefit local interests.

Here is the pertinent text of the challenged Act:

The Board may permit the storing of beverages upon premises other than the premises designated in the license by the holder of a ... (2) wholesaler's license;.... No licensee may store beverages upon premises outside the District, except that licensed wholesalers permitted by the Board to store beverages outside the District as of January 1, 1986, may continue to do so until July 27, 1988.

The D.C. Council enacted this regulation as D.C.Law 6–217, in 1987. Plaintiff

claims that the Act was the result of a sustained lobbying campaign by the Teamsters Union, which was interested in preserving jobs for its members in the District of Columbia. Plaintiff describes the background of this allegation as follows:

Quality Brands merged operations in 1980 with another company which had a warehouse in Glen Burnie, Maryland. At the time the two companies were merged, warehouse operations were consolidated at Glen Burnie, resulting in the elimination of 15 jobs in the District. One result of the consolidation was the transfer of jobs outside the jurisdiction of Local 639 of the Teamsters Union. Quality emphasizes that it offered to let the D.C. workers keep their jobs if they wanted to work in Maryland; all refused and found other jobs. If the workers had elected to go to work at Glen Burnie, they would have had to transfer their union affiliations anyway. According to plaintiffs, this merger led the Teamsters to lobby for passage of a statute designed to prevent Quality Brands from moving its warehouse operations outside the District of Columbia. According to plaintiff, these efforts began in 1981, the year that the Council first considered legislation entitled "Wholesale Liquor Industry Job Protection Act." The legislation was not successful at that time, nor when it was revived under the same title in 1983. Ultimately, it was re-introduced in 1985, and was passed. The name of the bill was changed in committee to the "Wholesale Liquor Industry Storage Age," although the substance of the bill remained unchanged.

The Committee Report on the bill describes the "issues and background" of the legislation in terms of lost jobs for District citizens and the competitive disadvantage suffered by warehouses in D.C. because of lower overhead, insurance rates and wages applying to warehouses outside D.C. The plaintiff's exhibits show that the Teamsters Local lobbied hard to cause the Council to amend the ABC Act to prohibit Quality (or any other liquor wholesaler) from using warehouses outside the city limits. Further evidence for the argument that the Act was intended to discriminate in favor of local workers is that the only reason offered in support of the bill by witnesses and by the executive branch (in the form of the D.C. Department of Consumer and Regulatory Affairs) was the preservation of jobs, with an incidental nod at increasing the tax base, since licensees would have to use storage facilities in the District.

## I. The Commerce Clause.

As a threshhold matter, it should be noted that a conventional Commerce Clause analysis does apply to laws passed by the D.C. government. *See, e.g., Electrolert Corp. v. Barry,* 737 F.2d 110 (D.C.Cir. 1984). The basic principles of such an analysis were stated in *Hughes v. Oklahoma,* 441 U.S. 322, 336, 99 S.Ct. 1727, 1736, 60 L.Ed.2d 250 (1979). First, a court must determine whether a challenged statute discriminates against interstate commerce. If the statute discriminates on its face, the court is to examine it with "the strictest scrutiny." *Id.* at 337, 99 S.Ct. at 1737. If the statute is to survive, the burden is on the State to justify it in terms of local benefits and the absence of non-discriminatory alternatives to preserve those local interests. *Id.* at 336, 99 S.Ct. at 1736. This inquiry as well requires "the strictest scrutiny." *Id.* at 337, 99 S.Ct. at 1737. As explained in *Hughes* and other cases, the Commerce Clause prohibits economic protectionism. "[W]here simple economic protectionism is effected by state legislation, a virtually *per se* rule of invalidity has been erected." *Philadelphia v. New Jersey,* 437 U.S. 617, 624, 98 S.Ct. 2531, 2535, 57 L.Ed. 2d 475. Parochial legislation that seeks "to create jobs by keeping industry in the State" is routinely struck down as protectionist, *Philadelphia v. New Jersey,* 437 U.S. at 627, 98 S.Ct. at 2537.

■ The first aspect of this inquiry is whether the Act is discriminatory on its face, *i.e.,* if its stated purpose is protectionist, or whether protectionism may be inferred from facts other than the stated purpose, such as when a "legitimate" state interest is articulated in the legislative history but belied by the facts. The courts are not bound by the characterization of a statute given by the legislature. "The cru-

cial inquiry, therefore, must be directed to determining whether [the statute] is basically a protectionist measure, or whether it can fairly be viewed as a law directed to legitimate local concerns, with effects upon interstate commerce that are only incidental." *Philadelphia v. New Jersey*, 437 U.S. at 624, 98 S.Ct. at 2536. Even if there are ancillary purposes for a statute which are nondiscriminatory, they must be more than "occasional and accidental," and cannot be based on "implausible speculation." *New Energy Co. of Indiana v. Limbach*, 486 U.S. 269, 108 S.Ct. 1803, 1810–11, 100 L.Ed. 2d 302 (1988).

The Act *is* clearly discriminatory on its face. It explicitly (on its face and in practical effect) regulates liquor storage in a way which favors local industry and workers at the expense of out-of-state interests. *Cf. Bacchus Imports v. Dias*, 468 U.S. 263, 271, 104 S.Ct. 3049, 3055, 82 L.Ed.2d 200 (1984). Defendant argues that Quality's Commerce Clause argument fails because the storage requirement does not burden interstate commerce, on the grounds that the sales occur inside the District, and the "precise location of the warehouse from which the later deliveries are made— whether inside the District or outside the District—is merely incidental." This argument is difficult to credit, since the prohibition is on sales of alcohol stored outside the District. Defendant appears to be arguing that the location is "incidental" even though it leads to a prohibition. The Court concludes that it is the prohibition which is the substance of the discrimination against foreign business created by the Act.

As plaintiff points out, the legislation struck down as protectionist in *Bacchus Imports v. Dias*, 468 U.S. 263, 104 S.Ct. 3049, 82 L.Ed.2d 200 (1984), was very similar to the statute challenged in this case: the legislature of Hawaii enacted an exemption from the State Liquor Tax for locally produced alcoholic beverages, for the purpose of encouraging local industry. The Court struck down the statute under the Commerce Clause, holding that "we need not guess at the legislature's motivation, for it is undisputed that the purpose of the exemption was to aid Hawaiian in-

dustry. Likewise, the effect of the exemption is clearly discriminatory, in that it applies only to locally produced beverages, even though it does not apply to all such products. Consequently, as long as there is some competition between the locally produced exempt products and non-exempt products from outside the State, there is a discriminatory effect." In this case, there is a prohibition, not just an exemption favoring local business. "[T]he Court has viewed with particular suspicion state statutes requiring business operations to be performed in the home State that could more efficiently be performed elsewhere." *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 145, 90 S.Ct. 844, 849, 25 L.Ed.2d 174 (1970). The Wholesale Liquor Industry Storage Act does just that: it requires business operations to be performed in the District of Columbia when, as is obvious from plaintiff's decision to merge and relocate, they could be performed more efficiently in Maryland. The Court concludes that the Act discriminates against interstate commerce "on its face" and therefore is "virtually *per se* invalid" under the rule of *Philadelphia v. New Jersey*. The Act is therefore subject to "the strictest scrutiny," and is invalid unless the defendants can show that the Act "advances a legitimate local purpose that cannot be adequately served by reasonable non-discriminatory alternatives." *New Energy Co. v. Limbach*, 108 S.Ct. at 1810.

Defendant has not denied that the purpose of the Act was, at least in part, to preserve jobs inside the District of Columbia, but argues that other legitimate purposes were also at work, and that any protectionist effects of the statute are incidental to them. Defendant asks the Court to weigh the possibility that the council considered several putatively legitimate bases for the Act. Basically, defendant argues that the D.C. Council made an attempt to articulate non-protectionist state interests in the legislative history, while plaintiff argues that the "legitimate purposes" given for the Act cannot withstand the "strict scrutiny" accorded facially discriminatory legislation.

Defendant points to the fact that when the Act reached the full council for a vote, the General Counsel questioned its constitutionality, and Councilman Ray made a statement suggesting several putatively legitimate state interests which would be promoted by requiring geographic proximity of warehouses, *e.g.*, auditing company records, monitoring compliance with the ABC laws, monitoring licenses, checking tax forms for audits, etc. However, the fact that these justifications were offered does not legitimize the Act, for, as plaintiff correctly points out, a mere statement of non-protectionist intent in legislative history does not end the inquiry. Under *Hughes,* the characterization given a statute by the enacting legislature is not controlling. 441 U.S. at 336, 99 S.Ct. at 1736. Facts external to the stated purpose may reveal protectionist purposes, and purported legitimate local purposes are subject as well to strict scrutiny. *Id.* at 337, 99 S.Ct. at 1737. This level of scrutiny is required by the Supreme Court to avoid the problem of "ingenious" state statutes which appear neutral but operate discriminatorily.

On this score, plaintiff argues that Councilman Ray's "11th–hour" rationalizations are ancillary to the central purpose of economic protectionism and therefore do not suffice to show a legitimate state purpose. Quality argues that the circumstances under which the Act was passed reveal the central protectionist purpose, since the Act was not proposed by any branch of local government, but was in fact adopted at the instigation of the Teamsters Union. Similarly, the bulk of the testimony offered to the Council stresses the importance of the Act from a job preservation standpoint.

Quality further argues that even assuming the legitimacy of the state interests proferred by Councilman Ray, those interests are not threatened by out-of-state storage and are not promoted by the legislation. In support of this argument, Quality asserts that local regulators had never had any difficulty with the types of regulatory enforcement mentioned by Councilman Ray before the vote. Defendants are on the record as admitting that "it appears that ABC records since 1979 fail to show any specific instance where ABC officials encountered one or more difficulties" in enforcement. Pl. Statement of Facts, ¶ 15. Furthermore, defendants admitted that there are no known instances, since 1979, in which District regulators have found any failure by plaintiff to comply with the ABC Act or with its conditions of licensure. Pl. Statement of Facts, ¶ 16. The practical effect of the Act would appear to be minimal from the standpoint of the District's regulatory interests, and therefore, the Court may conclude that the purported local interests offered by defendant do not sustain the burden of showing that the Act serves a legitimate local purpose. *Cf. Hunt v. Washington Apple Advertising Commission,* 432 U.S. 333, 353, 97 S.Ct. 2434, 2446, 53 L.Ed.2d 383 (1977). In any event, if legitimate purposes given for the Act are "ancillary" to a central purpose which is protectionist, in the sense that the non-protectionist effects of the statute are "merely an occasional and accidental effect of achieving what is its purpose," the constitutional infirmity is not overcome. *New Energy Co.,* 108 S.Ct. at 1810.

Defendant offers additional candidates for "legitimate local objectives" underlying the Act by arguing that the Act advances the goals of the ABC Act. These objectives are said to be the enforcement of the "three-tier licensing system" and the discouragement of the so-called "tied house." The "three-tier" system was created by the 1934 ABC Act, which requires local licensure, and separates retailers from wholesalers, and both from manufacturers; it prevents one firm from controlling the entire chain of distribution, the so-called "tied house." To achieve this goal, the '34 Act requires wholesalers to store liquor at the "place" described in their licenses, unless the right to require this is waived by the District. Waivers have been granted in *two* instances since 1934, and one of them was to the predecessor company of Quality, which was allowed to store liquor in Maryland. Defendant argues that such outside storage is a revocable privilege, and that the council's recent action was merely the exercise of power granted to it under the

ABC Act. The Court is not persuaded by this argument, since a decision to revoke plaintiff's "privilege" would have been vulnerable to the same Commerce Clause attack plaintiff now brings against the Act. *See H.P. Hood & Sons, Inc. v. DuMond*, 336 U.S. 525, 69 S.Ct. 657, 93 L.Ed. 865 (1949) (denial of license violated Commerce Clause because decision was motivated solely by protectionism).

■ Even if Councilman Ray's reasons were legitimate expressions of local concern, the statute would not survive scrutiny under the last prong of *Hughes*, which is whether non-discriminatory alternatives exist to serve the local purpose. Where the statute is discriminatory on its face, assertions of the absence of non-discriminatory alternatives are subject to "strict scrutiny." Although the Court concludes that the putatively legitimate local interests offered in defense of the Act are not sufficient to withstand strict scrutiny, it appears in any case that those interests could be met in a non-discriminatory way. For example, if there is a legitimate local interest in inspection, it is valid under the Commerce Clause to force out-of-state manufacturers to bear the expense of compliance with local requirements, rather than forbidding outside warehousing for the sake of avoiding those expenses. The principal non-protectionist justification defendant offers for wishing to keep liquor storage solely in the District is the *distance* from the District to Quality's warehouse in Glen Burnie, Maryland. But in looking at that argument with the requisite "strict scrutiny," it appears to the Court that it would be possible to enforce local regulations by requiring Quality to bear the burden of whatever inconvenience may result from distance, rather than by resorting to the drastic solution of prohibiting out-of-District storage.

## II. The Twenty–First Amendment.

Defendant argues that the Commerce Clause alone does not suffice to invalidate the legislation, because the article of commerce regulated is alcohol, so that the 21st Amendment protects the legislation even if it violates the Commerce Clause. Defendant relies on a 1944 Supreme Court case, *Carter v. Virginia*, where the Court stated that "the Amendment has been held to relieve the States of the limitations of the Commerce Clause on their powers over such transportation or importation." 321 U.S. 131, at 137, 64 S.Ct. 464, at 468, 88 L.Ed. 605 (1944). Accordingly, defendant argues, the standard of review for regulation of liquor control ordinances should be the "rational relation" test applied to economic regulation.

The history of the Supreme Court's construction of the relationship between the Twenty–First Amendment and the Commerce Clause reveals that defendant's argument is no longer tenable. Defendant relies on a body of case-law which is roughly contemporaneous with the Amendment to argue that State regulation of the liquor industry is protected from Commerce Clause scrutiny. Plaintiff responds that the Court has changed its approach to the effect of the Amendment on the operation of the Commerce Clause, and argues that the Court's contemporary analysis is to determine whether the State's regulation pertains to the purposes of the Amendment, meaning, primarily, whether the statute is intended to promote temperance.

■ In a recent case which carefully traced the history of the Supreme Court's interpretation of the Twenty-first Amendment, Judge Brieant concluded that "what is to be balanced is the state interest in promoting 'temperance' with the federal constitutional interest in free trade across state lines. Only those state restrictions which directly promote temperance may now be said to be permissible under Section 2 of the Twenty-first Amendment." *Loretto Winery Ltd. v. Gazzara*, 601 F.Supp. 850, 861 (S.D.N.Y.1985). These principles are the promotion of temperance and "to combat the perceived evils of an unrestricted traffic in liquor." *Bacchus Imports*, 468 U.S. at 276, 104 S.Ct. at 3058. As is pointed out in *Loretto Winery*, 601 F.Supp. at 861, the Amendment was designed only to allow the States to legislate against the evils of alcohol, rather than to reward its

purveyors. Therefore, in Judge Brieant's analysis, the powers reserved to the States by the Amendment must be exercised with temperance as their goal. This means that if a statute serves some purpose other than promoting temperance or combatting the evils of unrestricted liquor traffic, the Amendment yields to the Commerce Clause. This Court agrees with that view of the Supreme Court's present-day interpretation of the interaction of the Twenty-first Amendment and the Commerce Clause. Accordingly, the District's argument cannot survive unless the Liquor Industry Storage Act "directly promote[s] temperance," and thereby brings the statute outside the ambit of the Commerce Clause.

■ The justifications offered by defendant for the legislation as non-discriminatory bases for the statute are not "directly" related to the promotion of temperance. Taxation, inspection and the maintenance of local jobs have, possibly, a tangential, attenuated, connection with temperance in the sense that regulation of the liquor industry may limit the accessibility of alcohol to some degree; but any relation to the promotion of temperance which may be traced to that source is hardly the direct promotion of temperance which is required to invoke the Twenty-first Amendment. The Liquor Storage Act does not serve to promote temperance except incidentally, since all it does, in effect, is to say that residents of the District can drink as much as they want so long as they drink liquor stored inside the District. Defendant's argument is nothing but a pretextual rationale: temperance is merely a pretext for economic protectionism. The Supreme Court has stated that "[t]he central purpose of the [Amendment] was not to empower States to favor local liquor industries by erecting barriers to competition." *Bacchus Imports*, 468 U.S. at 276, 104 S.Ct. at 3058. In this case, defendant has offered no showing that its decision to forbid sale of liquor stored outside the District would have any real impact on temperance.

Therefore, the Court finds that the Wholesale Liquor Industry Storage Act violates the Commerce Clause and does not fall within the protections of the 21st Amendment. Therefore, it is ORDERED that enforcement of the Act is ENJOINED.

SO ORDERED.