

# THE ATTORNEY GENERAL

## OF TEXAS

### AUSTIN 11, TEXAS

**WILL WILSON**
**ATTORNEY GENERAL**

May 23, 1961

Honorable Coke R. Stevenson
Administrator
Texas Liquor Control Board
Austin, Texas

Opinion No. WW-1067

Re: Whether a person who solicits
and takes orders in Texas for
liquor that is stored in a
United States Custom Bonded
warehouse, under the facts
submitted, is required to pro-
cure a permit under Article 1,
Section 4(a) of the Texas
Liquor Control Act (Article
666-4(a), Vernon's Penal Code)?

Dear Mr. Stevenson:

Your request for an opinion reads as follows:

"We are confronted with the following situation.
A person seeks to establish a United States Bonded
Warehouse in the State of Texas for the purpose of
supplying liquor to individual travelers destined for
foreign countries, and for the purpose of supplying
liquor to sea-going vessels, and for the purpose of
exporting liquor. In so doing he expects to avoid
Federal taxes and State taxes on this commodity. To
conduct this business it will, of course, be necessary
for him to solicit and take orders for liquor within
the State of Texas.

"Section 4(a) of Article 1 of the Texas Liquor
Control Act provides as follows:

'It shall be unlawful for any person
to manufacture, distill, brew, sell, possess
for the purpose of sale, import into this State,
export from this State, transport, distribute,
warehouse, store, solicit orders for, take
orders for, or for the purpose of sale to bottle,
rectify, blend, treat, fortify, mix, or process
any liquor in any wet area without first having
procured a permit of the class required for such
privilege.'

"Without raising the question of whether
the tax of the State of Texas may be so avoided
we are of the opinion that this person will violate
the above quoted Section of the Texas Liquor Control
Act if he engages in this business in the State of
Texas without first having procured a proper permit
issued by the Texas Liquor Control Board.

"We respectfully request your valued opinion
on the following question:

"Does a person who solicits and takes orders
in Texas for liquor that is stored in a United States
Custom Bonded warehouse for the purpose of supplying
individual travelers destined for foreign countries or
for the purpose of supplying sea-going vessels or for
the purpose of exportation violate Section 4(a) of
Article 1 of the Texas Liquor Control Act, if he does
so without first having procured a proper permit issued
by the Texas Liquor Control Board?"

The Commerce Clause, Article 1, Section 8, Clause 3 of the
Constitution of the United States, says:

"The Congress shall have power to lay and
collect Taxes, Duties, Imposts and Excises, to pay
the Debts and provide for the common Defense and
general Welfare of the United States; but all
Duties, Imposts and Excises shall be uniform through-
out the United States;

". . .

"To regulate Commerce with foreign Nations, and
among the several States, and with the Indian Tribes."

The Import-Export Clause, Para. 2, Article 1, Section 10,
reads as follows:

". . .

"No State shall, without the Consent of the
Congress, lay any Imposts or Duties on Imports or
Exports, except what may be absolutely necessary
for executing its inspection Laws; and the net Produce
of all Duties and Imposts, laid by any State on Imports
or Exports, shall be for the Use of the Treasury of the
United States; and all such Laws shall be subject to
the Revision and Control of the Congress.

Honorable Coke R. Stevenson, Page 3 (WW-1067)

    ". . ."

        Section 2 of the Twenty-First Amendment - Repeal of Prohibition Amendment - of the Constitution of the United States reads as follows:

        "Section 2. The transportation or importation into any State, Territory, or possession of the United States for delivery or use therein of intoxicating liquors in violation of the laws thereof, is hereby prohibited."

        The State of Texas has the right to tax or regulate intoxicating beverages moving into or through the State of Texas in the exercise by the State of Texas of its police power, Gordon v. State, 310 S.W.2d 328 (Tex.Crim. 1956), Judgment Affirmed, 355 U.S. 369, Rehearing Denied, 355 U.S. 967; Carter v. Virginia, 321 U.S. 131, (1944), Affirming 181 Va. 306, 24 S.E.2d 569. Therefore, any intoxicating beverages moving from the United States Custom Bonded Warehouse through the State of Texas after the importation into the State of Texas has been completed, by passing through United States Customs Inspection or the equivalent thereof, are subject to regulation by the State of Texas.

        The U. S. Supreme Court has held that, since the Twenty-First Amendment, each state has the right to prohibit or regulate the importation of intoxicating liquors for delivery or use therein unlimited by the Commerce Clause. Indianapolis Brewing Co. v. Liquor Control Commission, 305 U.S. 391 (1939); Joseph S. Finch & Co. v. McKittrick, Attorney General, 305 U.S. 395 (1939). It has also held that since the adoption of the Twenty-First Amendment the "Equal Protection Clause" is inapplicable to intoxicating liquors imported into a state. Mahoney Liquor Control Commission v. Joseph Triner Corp., 304 U.S. 401 (1938).

        While it has been held that the Twenty-First Amendment does not apply to intoxicating beverages transported through a state, Collins v. Yosemite Park & Curry Co., 304 U.S. 578 (1938), it seems clear that the Twenty-First Amendment overrides the Commerce Clause or any other part of the Constitution in conflict with the Twenty-First Amendment where the intoxicating beverages are imported into a state for delivery or use in said state. While the fact that an item maintains its character as a "foreign import" might remain important in the determination of the extent of the police powers of the state, the question of whether or not an item maintains its character as an import is not important to the applicability or non-applicability of the Twenty-First Amendment since the purpose of

the Twenty-First Amendment is to allow the regulation and control of _imports_ by the various states.

In the present case the intoxicating beverages will be imported into the State of Texas and if _delivery_ or _use_ of said beverages occures within the State of Texas, the Twenty-First Amendment requires that the laws of the State of Texas be followed.  Under the fact situation which you present for our consideration you do not state whether delivery or use occurs within the State of Texas; however, if the ships being supplied or upon which the individual being supplied travels are within the territorial bounds of the State of Texas when the beverages are delivered by the person selling the beverages from the United States Custom Bonded Warehouse it would seem clear that the State of Texas has the right to regulate such transaction since it falls within the area contemplated by the Twenty-First Amendment.  If delivery or use does not occur within the State of Texas, but the goods are shipped out of the United States without a sale or delivery occurring and while the goods maintain their character as a foreign import such transactions would not be subject to regulation by the State of Texas.

In the exercise of its authority to regulate, the State of Texas is clearly allowed to exact a license fee for the privilege of importing, possession, distributing, or any other activity connected with intoxicating beverages.  _State Board of Equalization of California v. Young's Market Co.,_ 299 U.S. 59 (1936).  In those areas which Texas has the right to regulate the traffic in liquor, Texas has done so by the passage of the Texas Liquor Control Act and any action in the areas mentioned above of a commercial nature without first procuring a permit of the class required from the Texas Liquor Control Board would be a violation of the Texas Penal Code.

### S U M M A R Y

A person who solicits and takes orders in Texas for liquor that is stored in a United States Custom Bonded Warehouse, under the facts submitted, is required to procure a permit under Article 1, Section 4(a) of the Texas Liquor Control Act.

Yours very truly,

WILL WILSON
Attorney General of Texas

By Cecil Cammack, Jr.
Assistant Attorney General

CC:ca

APPROVED:

OPINION COMMITTEE
W. V. Geppert, Chairman
Virgil Pulliam
L. P. Lollor
Maston Courtney
Dudley McCalla

REVIEWED FOR THE ATTORNEY GENERAL
BY:  Morgan Nesbitt