No. 36,496

THE STATE OF KANSAS, *Appellee*, v. SAM GOLDBERG, *Appellant*.

(166 P. 2d 664)

Opinion filed March 9, 1946.

*Matt Guilfoyle* and *John H. Lehman*, both of Abilene, were on the briefs for the appellant.

*A. B. Mitchell*, attorney general, *Leon W. Lundblade*, assistant attorney general, *Paul H. Royer*, of Abilene, and *Dean McIntyre*, county attorney, were on the briefs for the appellee.

The opinion of the court was delivered by

BURCH, J.: This case involves the confiscation of a car which it is alleged was being used by the defendant in violation of the laws of the State of Kansas in the transportation of intoxicating liquor. The defendant, Sam or Sammy Goldberg, owned the car and appeals from orders of the district court declaring the car to be a common nuisance and ordering it forfeited and sold in accordance with pertinent statutes of our state. The errors complained of are: (1) In overruling defendant's motion for continuance under the provisions of the Soldiers' and Sailors' Civil Relief Act of 1940 as amended, Title 50, USCA, beginning at page 113; (2) the judgment is contrary to the evidence and contrary to law, particularly as declared in the case of *Johnson v. Yellow Cab Co.*, 321 U. S. 383, 88 L. Ed. 814; and (3) in overruling his motion for a new trial.

The material facts, in regard to which little dispute arises, are as follows: Sammy Goldberg was a corporal in the United States army, serving at the Smoky Hill Army Air Base near Salina, Kan.;

while there he was a director of entertainment and in such capacity produced a minstrel show. The show was successful insofar as comedy and entertainment were concerned, but it didn't close soon enough and the enthusiasm which caused the final curtain call resulted in tragedy for Goldberg. According to the defendant's testimony some of his superior officers thought that the minstrel show was such a success that its production necessitated a celebration. Some of the officers agreed to buy potato chips, others—beer, and still others—"hot dogs." (The words "hot dogs" are here used to describe some form of meat often found in the center of sandwiches which are designed to be eatable, even if of doubtful digestibility.) In the course of conversations some one suggested that the defendant go to Kansas City and get two cases of liquor. The defendant agreed to do so and in compliance with his agreement he drove to Kansas City, Mo., one Saturday and bought two cases at a drugstore in such city. He testified as follows: "It was a bad day the following day, which was Sunday, and I was coming back with the liquor and as I got to Abilene I started down the main street . . . when the sheriff accosted me . . ." The defendant then admitted having the two cases of liquor in his car, but stated that it was going to be used in the noncommissioned officers' mess in the air base at Salina, Kan. He admitted that the liquor and the car in which it was being carried belonged to him. He was arrested and confined to jail on the night of February 25. On the following day he was charged with possession and transportation of intoxicating liquor and a complaint was filed against the automobile in controversy declaring it a common nuisance and asking that it be confiscated, forfeited and sold. Two majors and a lieutenant from the air base, one of them being from the provost marshal's office, appeared the next day and insisted on the defendant being released for prosecution by the army. As a consequence a criminal warrant was not then served upon the defendant. The warrant for the forfeiture of the automobile and the notice were served on him and he was released to the army for prosecution. The next day the defendant returned with some of the army officers and requested that the criminal prosecution be had in Dickinson county rather than in the army. Why the army officers returned him to the civilian authorities remains unexplained. After they did so, a warrant was filed and served upon him and he pleaded guilty to violating the liquor laws on two counts, to wit: Possession

of intoxicating liquor and transportation of intoxicating liquor. He was given a jail sentence and a minimum fine and was paroled. He was cautioned about the danger incident to entering a plea of guilty to the charge of transportation, in the event he intended to oppose the confiscation of the automobile, but regardless of such admonition the defendant pleaded guilty to possession and also to transportation. An answer was filed in behalf of Goldberg in the automobile-confiscation case and the case was set for hearing on May 7, 1945. Goldberg was represented at the hearing by counsel and evidence was introduced therein by the state. The defendant offered no evidence and the automobile was adjudged to be a common nuisance, declared forfeited and ordered sold. The answer, after denying every material allegation contained in the complaint, reads as follows: "This answering defendant alleges that he is the owner of the car described in said complaint. This answering defendant further alleges that he is in the military service of the United States and was at the time said automobile was seized by the sheriff of Dickinson county, Kansas. Wherefore this defendant prays that the said automobile be returned to him and that he have his costs herein." It should be noted that the answer sets forth nothing in the nature of a plea to the effect that the automobile was being used in interstate commerce at the time it was taken into custody by the sheriff. No contention is made in this case that the liquor was not intoxicating.

On appeal the case was set for trial in the district court on May 25. At such time the defendant, through counsel, filed a motion for continuance under the Soldiers' and Sailors' Civil Relief Act of 1940, *supra*. The motion sets forth that Sam Goldberg was in the military service of the United States and that all his witnesses were in the military service of the United States and that by reason of such military service the defendant was not in a position to defend the action at that time. Attached to the motion for continuance was the affidavit of Sam Goldberg, which, in substance, stated that he was the owner of the automobile; that he was in the military service at the Salina Army Air Field; that because of his military duties it was impossible for him to attend the trial of the case; that all of his witnesses were in the military service and could not absent themselves from their military duties in order to appear as witnesses. At the conclusion of a long argument on the motion the court held that there had been an insufficient showing that the military duties

of the defendant deprived him of an opportunity to prepare for trial and conduct his defense in the case. The motion for continuance was overruled but the court continued the case for hearing on the next motion day, which was June 12. Therefore, it appears that the case actually was continued for over two weeks—from May 25 to June 12. On the call of the case on the latter date the defendant appeared in person, and by counsel who, in effect, renewed the motion for a continuance and contended that the court had no right to try the action over the objection of the defendant. The court overruled the objection.

Nothing is to be gained by reviewing all of the evidence introduced by the state. It was sufficient to support the allegations of the complaint and counsel for the defendant do not contend to the contrary. In support of the answer filed by the defendant, he testified to the facts hereinbefore set forth and also that the liquor was wrapped with gummed labels and had his name written on it; that it was legally purchased in Kansas City, Mo., and was being taken back to the air base for the purpose of being consumed at a party on the air base; that no part of it was to be used anywhere other than on the military reservation. He further testified that he was not allowed by his superior officers to have time off for appearance at the car condemnation hearing in the county court and that the circumstances which enabled him to be present in the district court were that he was then on night duty and by missing his sleep he was able to appear. He further testified that he had asked two majors, who were still on duty at the air base, to appear as witnesses in his behalf and that they had refused to so appear, and advised him that they had been informed and directed that they did not need to respond to a subpoena; that, therefore, he did not have a subpoena issued for them. In addition to such evidence, an exhibit was received in evidence showing that the Salina Air Base was a military reservation within the state of Kansas. The state does not concede that the exhibit was sufficient for the purpose but the question is not material in view of the conclusion reached by this court as hereinafter set out.

1. The first question for decision is whether the trial court erred in its ruling denying the continuances under the Soldiers' and Sailors' Civil Relief Act of 1940. If it had been the desire of the enactors of such legislation to exempt all members of the military service from all civil and criminal responsibility under the laws of the respective states during the term of their military service and a lim-

ited period thereafter, a simple statutory provision to such effect could have been passed. Instead of containing such a provision, the act as passed contains a provision reading as follows:

"§ 521. At any stage thereof any action or proceeding in any court in which a person in military service is involved, either as plaintiff or defendant, during the period of such service or within sixty days thereafter may, *in the discretion of the court* in which it is pending, on its own motion, and shall, on application to it by such person or some person on his behalf, be stayed as provided in this Act, *unless, in the opinion of the court,* the ability of plaintiff to prosecute the action or the defendant to conduct his defense is not materially affected by reason of his military service. Oct. 17, 1940, c. 888, § 201, 54 Stat. 1181." (Emphasis supplied. 50 USCA, p. 139.)

The wording of the act alone forces the conclusion that the granting or refusal of a continuance is a question for the court's discretion. Even though the act is so clear as to negative the necessity for construction, nevertheless the courts have consistently construed it as vesting discretion in the courts as to whether an action should be stayed because a party thereto is in the military service. (See Notes of Decisions beginning at page 139 in 50 USCA and page 30 in the 1945 Cumulative Annual Pocket Part.) The act applies to state courts in its entirety notwithstanding that a particular provision under which relief is sought has no counterpart in analogous state acts. (See *New York Life Ins. Co. v. Litke* [1943], 181 Misc. 32, 45 N. Y. S. 2d 576.)

Counsel for the defendant concede that the question of suspension of proceedings while the defendant is in the military service is a matter of discretion for the trial court but contend, in substance, that the court abused its discretion in the present case. Defendant's counsel base their argument largely upon the contention that the defendant was put to an obvious disadvantage because of the unfair attitude of his superior officers arising by reason of their failure and refusal to testify in behalf of the defendant. The argument is advanced that any one having some knowledge of military life would know that it would have been very unwise for defendant corporal to have embarrassed his commanding officers by attempting to subpoena them into court. If it would aid the defendant to any extent, this court might be inclined to take judicial notice of such fact. The hopeless hollowness of the argument appears with the realization that even if the officers had appeared and testified to all that the defendant asserted was true, nevertheless such evidence would only have been cumulative and would not

have affected materially the ability of the defendant to defend the action by reason of his military service. The argument advanced by defendant's counsel does not convince this court that the defendant was prejudiced by reason of the court's refusal to stay the proceedings and grant an indefinite continuance thereof. Such is particularly true because this court is of the opinion that the defendant did not allege, prove or offer to prove sufficient facts to establish a defense to the complaint under which the state sought to confiscate the car. A failure to have adequate opportunity to prove immaterial or insufficient facts could not be prejudicial to the defendant or affect his ability to conduct a defense, unless he had a defense.

2. The only defense asserted by the defendant is that his car, at the time of its seizure, was being used in furtherance of interstate transportation of liquor, and therefore, that the state was without power to control the liquor transaction or to confiscate the car involved therein. In support thereof, the defendant relies solely upon the case of *Johnson v. Yellow Cab Co.*, supra, and contends that, under such authority, the interstate character of the transaction arises by reason of the liquor having been bought in Missouri and having been in the process of transportation to a United States military reservation regardless of whether such reservation was located within the state of Kansas or in some other state. To such limited extent only the cited case may be authority sustaining the defendant's contention. But a litigant who relies upon a decision must bring himself within the circle of its circumstances; otherwise, the application of legal principles would never be confined to an area of essential facts.

In the cited case of *Johnson v. Yellow Cab Co.*, supra, the respondent was a common carrier by motor vehicle, authorized by the Interstate Commerce Commission to transport in interstate commerce various commodities, including wines and liquors. In the regular course of business the respondent carrier undertook to transport 225 cases of wines and liquors from East St. Louis, Ill., through Missouri to Oklahoma and thence to a consignee at Fort Sill, a military reservation within the boundaries of Oklahoma. While the vehicle carrying the liquors was momentarily stopped at Oklahoma City, officials forcibly seized and took away the liquors. The respondent filed a complaint in the federal district court alleging that the seizure constituted an unlawful interference

with its authorized interstate transportation and asked the court to order the officials to return the liquors so that it might deliver them to the consignee at Fort Sill. We pause for comparison purposes—the defendant in this case was not a common carrier authorized by the Interstate Commerce Commission to transport anything in interstate commerce. We quote from the cited case the following:

"No Oklahoma law purports on its face to prohibit or regulate interstate shipments of liquor into and through the state to another state, or to an area subject to the exclusive jurisdiction of the United States. And we were informed at the bar by Oklahoma's legal representative that no state statute had been construed by any state court as applying to such through shipments." (p. 386.)

The opinion continues by commenting upon the fact that Oklahoma has a statute which makes it unlawful to import intoxicating liquor into the state without a permit, and later in the opinion it is pointed out that no permit to transport liquor into Oklahoma can be obtained at all except for scientific, mechanical, medicinal, industrial or sacramental purposes. (Okla. Stat. 1941, Title 37, § 42.) Referring to the statute which makes it unlawful to import intoxicating liquor into the state without a permit (Okla. Stat. 1941, Title 37, § 41), the opinion in the cited case sets forth the following significant, if not controlling, statement:

"Were this statute intended to do no more than provide a means whereby the state could protect itself from illegal liquor diversions within the area which Oklahoma has power to govern, the interpretation asked might well be an acceptable one. *Duckworth v. Arkansas,* 314 U.S. 390, 86 L. Ed. 294, 62 S. Ct. 311, 138 A.L.R. 1144; *Carter v. Virginia,* decided January 31, 1944 (321 U.S. 131, *ante,* 605, 64 S. Ct. 464.)" (p. 386.)

What is the parallel situation in Kansas? Our statutes provide for and regulate the lawful transportation of intoxicating liquors across the state of Kansas. (See G. S. 1935, 21-2184 to 21-2189.) G. S. 1935, 21-2185, reads as follows:

"It shall be unlawful for any person, firm or corporation to transport, carry or convey across the state of Kansas by motor truck or other motor vehicles or have in his or its possession any intoxicating liquor intended to be transported, carried or conveyed across the state of Kansas in interstate commerce unless such person, firm or corporation shall have first entered the state of Kansas at a regularly established port of entry and have said cargo of intoxicating liquor duly inspected and sealed by the officer in charge of said port of entry and shall declare in writing to said officer in charge of said port of entry the kind and quantity of said intoxicating liquor, the name of

the owner thereof, the name of the consignor and the name of the consignee, the route of travel across the state of Kansas as designated by the said officer in charge of said port of entry, the port of exit from the state of Kansas, the description of the vehicle transporting, carrying or conveying said intoxicating liquor, the name of the driver, and the person in charge thereof, and shall continue on said route of travel without unnecessary delay until said cargo of intoxicating liquor has reached the said port of exit from the state of Kansas with unbroken seals and with the same kind and quantity of intoxicating liquor which entered the state of Kansas at the original port of entry, and have said cargo duly inspected and checked by the officer in charge of said port of exit. The person in charge of such port of entry shall charge and collect a fee of $2.50 upon the sealing and unsealing, respectively, of such cargo, said fees to be in addition to all other fees and charges against such carrier."

G. S. 1935, 21-2188, provides for the disposition of vehicles used in the transportation of intoxicating liquors across the state of Kansas whose owners or operators have not complied with the provisions of G. S. 1935, 21-2185, above set out. Such vehicles are therein declared to be common nuisances and provision is made for their seizure and confiscation in the same manner as is now provided by law in the case of an automobile or other vehicle used in the transportation or carrying of intoxicating liquors into this state or from one place to another within this state.

Before the defendant could have availed himself of the privileges provided for interstate transportation of liquor across the state it was necessary for him to have complied with all lawful regulations relative thereto. Obviously, in the instant case the defendant could not have claimed that he made any effort whatever to comply with our statutory requirements and it is equally obvious that all the testimony he might have produced by having in attendance at his trial all of the desired military personnel would not have approached proof of the defendant's compliance with the pertinent state regulations. As hereinbefore noted, the answer which he filed did not allege that he was a common carrier with an interstate permit and did not allege, even by inference, that the defendant invoked or relied upon the privileges and immunities from seizure provided for by the statute. Even if we should ignore the necessity of a proper pleading having been filed and consider that his answer should be construed as having been amended to conform with his proof, nevertheless, it would be impossible to find from any evidence introduced, proffered or suggested that the defendant came within the classification of a common carrier engaged in interstate commerce. Such a

classification is a requisite to any relief which might be afforded a litigant under the authority of the case relied upon by counsel for the defendant. All such carriers must comply with the applicable regulatory statutes of this state or be subjected to the penalties therein provided for their violation.

There is slight, if any, analogy between the present case and the case of *Johnson v. Yellow Cab Co.*, supra, and a prolonged discussion distinguishing between the two is not necessary. Since the Kansas statutes regulate lawful interstate transportation of intoxicating liquors across the state and Oklahoma did not have similar statutes, most of the reasoning set forth in the last-cited case has no application whatever to the present case. Reference to additional decisions hereinbefore cited in the Johnson case by the Supreme Court of the United States, to wit, *Duckworth v. Arkansas*, 314 U. S. 390, and *Carter v. Virginia*, 321 U. S. 131, will disclose that they dispose of all contentions to the effect that our applicable statutes violate the commerce clause of the fourteenth amendment, or the twenty-first amendment, to the constitution of the United States. Our statutes do not prohibit but only reasonably regulate, and therefore, are valid and enforceable in the absence of any conflict with federal statutes regulating interstate shipments of intoxicating liquors.

From the foregoing it follows that the defendant could not be benefited by the granting of a new trial. The judgment of the district court is affirmed.