John David LEE, Appellant,

v.

Hon. Stephen M. GEORGE, Judge, Jefferson Family Court, Appellee.

and

Jill Leanne Lee (now Stanley); and Christopher Harrell, Guardian Ad Litem, Real Parties in Interest.

No. 2011–SC–000265–MR.

Supreme Court of Kentucky.

June 21, 2012.

See also 2012 WL 1447535.

John David Lee, Louisville, KY, for Appellant.

Hon. Stephen M. George, Judge, Jefferson Family Court, Division Nine, Louisville, KY, for Appellee.

Louis Irwin Waterman, Scott E. Karem, Louisville, KY, Counsel for Real Party in Interest, Jill Leanne Lee (now Stanley).

Christopher M. Harrell, Louisville, KY, Counsel for Real Party in Interest, Christopher Harrell, Guardian Ad Litem.

## OPINION OF THE COURT

This is an appeal of the Court of Appeals' denial of John David Lee's petition

for a writ of mandamus or prohibition.[1] The underlying case is a divorce action. In his writ petition, Appellant asked that the trial judge be required to disqualify himself from further involvement in the case because of his bias against Appellant. In addition, Appellant asked that the guardian ad litem and opposing counsel be disqualified because he claimed they engaged in fraud and conspiracy against him. The Court of Appeals is affirmed.

## I. Background

Appellant and Jill Stanley were married in 1991 and divorced in 2009. They have three minor sons. Judge Stephen George of the Jefferson Family Court heard the divorce proceedings, including a trial in December 2009 to determine custody, parenting time, and related issues, and a trial in July 2010 to determine property and debt distribution. As of April 2011, when Appellant's writ petition was filed, Stanley had full custody of the children, and Appellant had unsupervised visitation with the children on a regular schedule each week and on various holidays.[2]

The parties' divorce has been highly contentious. The trial court believed that much of this contentiousness was initiated by Appellant. In the January 2010 judgment deciding custody and parenting time, the court characterized Appellant's behavior after the parties' separation as "reprehensible" and "emotionally abusive" and discussed specific instances of this be-

havior. Over the next year, there were constant disputes between the parties about the children's activities, conditions of visitation, and child support, among other issues. Although Appellant was briefly represented by an attorney early in the divorce case, he proceeded *pro se* for most of the litigation before the trial court and all of the appellate litigation. Appellant filed a large number of motions with the trial court, many of which were found to be baseless. Stanley filed several motions for CR 11 sanctions, but the trial judge was hesitant to impose such a sanction because Appellant was self-represented.

In January 2011, Stanley filed a motion to require Appellant to post a bond prior to any future motions being called. Stanley argued that Appellant had engaged in a pattern of vexatious litigation in an attempt to harass her and harm her financially. The court agreed and issued an order imposing a bond. Appellant had filed thirty-six new motions between July 15, 2010 and January 10, 2011, only five of which the court found to be grounded in law and fact. The court devoted five pages of its order detailing some of the meritless motions that Appellant had filed, as well as comments Appellant had made to the court and the other parties indicating he intended to continue his pattern of litigation. The court ordered Appellant to post a $7,500 bond before any further motions would be called or taken under submission.[3]

---

1. Appellant petitioned for a writ of mandamus and/or a writ of prohibition. Depending on how Appellant's requests for relief are framed, either one may be the appropriate writ for him to request. Both are "extraordinary writs" that are treated the same for the purposes of determining whether a writ is available in a particular case. *Mahoney v. McDonald–Burkman*, 320 S.W.3d 75, 77 n. 2 (Ky.2010).

2. Because this is a writ action, the record is not complete. *Cf. Cox v. Braden*, 266 S.W.3d 792, 795 (Ky.2008) ("The expedited nature of writ proceedings necessitates an abbreviated record."). The facts described in this opinion are based on what can be gleaned from the briefs and the limited record.

3. Appellant apparently continued to file motions without posting the bond during the spring of 2011, and on May 5, 2011, the court entered an order clarifying and reiterating

In April 2011, Appellant filed a petition for a writ of mandamus or prohibition. He asked the Court of Appeals to order Judge George to disqualify himself because he had not acted impartially. The petition also asked the court to disqualify Stanley's counsel, Louis Waterman, and the guardian ad litem, Christopher Harrell, because they had "engaged in fraudulent activity and nefarious conduct, including conspiracy to harass the Petitioner in this case, disrupting and biasing the Court with falsified evidence and false testimony." Appellant argues that he will receive fair proceedings only once Judge George, Waterman, and Harrell are no longer involved in the case.

In his writ petition, Appellant discusses the $7,500 bond primarily as an example of Judge George's alleged bias against him. However, he also includes a brief argument that the bond violates his due process rights and his right of access to the courts. The Court of Appeals construed Appellant's discussion of the bond issue as an additional basis for Appellant's request for extraordinary relief.

The Court of Appeals denied Appellant's petition, finding that the bias, fraud, and conspiracy issues raised by Appellant are properly the subject of direct appeals. The Court of Appeals also determined that the $7,500 bond was "reasonably limited in scope so as not to deprive petitioner meaningful access to the court." Thus, the Court of Appeals found that there was no basis for extraordinary relief.

## II. Analysis

■ Extraordinary writs may be granted in two classes of cases. The first class requires a showing that "the lower court is proceeding or is about to proceed outside of its jurisdiction and there is no remedy through an application to an intermediate court." *Hoskins v. Maricle*, 150 S.W.3d 1, 10 (Ky.2004). The second class requires a showing that "the lower court is acting or is about to act erroneously, although within its jurisdiction, and there exists no adequate remedy by appeal or otherwise," and it usually requires a showing that "great injustice and irreparable injury will result if the petition is not granted." *Id.* However, there are "special cases" within the second class that do not require a showing of great injustice and irreparable injury. In those special cases, a writ is appropriate when "a substantial miscarriage of justice" will occur if the lower court proceeds erroneously, and correction of the error is necessary "in the interest of orderly judicial administration." *Independent Order of Foresters v. Chauvin*, 175 S.W.3d 610, 616 (Ky.2005) (quoting *Bender v. Eaton*, 343 S.W.2d 799, 801 (Ky.1961)). Even in these special cases, the party asking for a writ must show that there is no adequate remedy on appeal. *Id.* at 617. Satisfying these tests, however, does not guarantee that a writ will issue. They are merely "a practical and convenient formula for determining, prior to deciding the issue of alleged error, if petitioner may avail himself of this remedy." *Bender v. Eaton*, 343 S.W.2d 799, 801 (Ky.1961). And even upon examining the merits of a claim, issuance of the writ is still within the sound discretion of the appellate court. *Id.* at 800.

■ Appellant argues that he should be allowed to proceed under both the first and second classes described above, as well as the subclass of "special cases."

that "Mr. Lee shall not file any motion in the future without posting the $7,500 bond." This order was issued after the Court of Appeals' opinion denying Appellant's petition for a writ on April 19, 2011. The May order appears to be functionally the same as the January order imposing the bond.

This Court reviews appeals from the denials of writs based on questions of law *de novo*. *Shafizadeh v. Bowles*, 366 S.W.3d 373 (Ky.2011).

### A. First Class of Writs.

Appellant argues that Judge George acted outside his jurisdiction by being biased against Appellant. Appellant's argument is that a biased judge is necessarily acting outside of his jurisdiction when he acts as a biased individual and not as a truly neutral judge.

■ Appellant's argument is essentially that the trial court was acting contrary to law and therefore was acting outside its jurisdiction. Such an understanding of jurisdiction would effectively gut our procedures for appellate review because, under such an approach, the lower court would be proceeding outside its jurisdiction *every time* it made an erroneous decision, and so an extraordinary writ would be available for every alleged error. In the context of the extraordinary writs, "jurisdiction" refers not to mere legal errors but to subject-matter jurisdiction, *e.g., Goldstein v. Feeley*, 299 S.W.3d 549 (Ky.2009), which goes to the court's core authority to even hear cases. *See, e.g., Petrey v. Cain*, 987 S.W.2d 786, 788 (Ky.1999) (defining subject-matter jurisdiction as "a court's authority to determine 'this kind of case' as opposed to 'this case'" (quoting *Duncan v. O'Nan*, 451 S.W.2d 626, 631 (Ky.1970))).

■ Here, the family court clearly has the jurisdiction to hear divorce cases and to issue and enforce orders related to the cases. There is no statute or rule applicable to this case that would limit the trial court's jurisdiction on the issues raised by Appellant. For these reasons, the Court of Appeals was correct in its determination that "it is clear beyond dispute that the family court is acting within its jurisdiction" and that this case does not fall into the first class of cases in which extraordinary writs are available. For the same reasons, Appellant's claim that the trial court acted outside of its jurisdiction because of its order prohibiting Appellant from filing any lawsuits on behalf of his children (because he did not have legal custody of the children) is without merit.

### B. Second Class of Writs.

■ To qualify for the second class of cases in which extraordinary writs are available, Appellant must show that there is no adequate remedy by appeal for the trial court's error. "No adequate remedy by appeal" means that Appellant's injury "could not thereafter be rectified in subsequent proceedings in the case." *Independent Order of Foresters*, 175 S.W.3d at 615 (quoting *Bender*, 343 S.W.2d at 802). The Appellant must also then show either great injustice and irreparable injury or that his case fits into the narrow "certain special cases" exception. We first consider Appellant's general claims that the trial court is biased against him and that the guardian ad litem and opposing counsel have acted fraudulently, and then we turn to the issue of the $7,500 bond.

#### 1. Bias, Conspiracy, and Fraud Claims.

On the bias, conspiracy, and fraud issues, Appellant argues that he will not have an adequate remedy by appeal and that he will suffer irreparable injury because of the time it takes for the appeals to be decided and the effect of the delay on his relationship with his children. He believes that he and his children are injured because his visitation with them is more limited than it should be, and this error cannot be corrected until the Court of Appeals considers the appeals, which could take many months.

■ This Court has repeatedly held that the delay and expense of appeals does

not constitute irreparable injury or render remedy by appeal inadequate. *See, e.g., Buckley v. Wilson*, 177 S.W.3d 778, 781 (Ky.2005) (holding that the delays inherent in every lawsuit and appeal do not constitute inadequate remedy by appeal); *Ison v. Bradley*, 333 S.W.2d 784, 786 (Ky.1960) ("[T]he delay incident to litigation and appeal by litigants who may be financially distressed cannot be considered as unjust, does not constitute irreparable injury, and is not a miscarriage of justice."). This Court has also rejected the argument that the "intangible costs of justice delayed" justify the availability of an extraordinary writ. *Mahoney v. McDonald–Burkman*, 320 S.W.3d 75, 79 (Ky.2010). Moreover, no irreparable injury results "from the petitioner's temporary loss of a judgment to which he believed himself entitled in the event of a correct ruling." *Hoskins*, 150 S.W.3d at 19 (citing *Litteral v. Woods*, 223 Ky. 582, 4 S.W.2d 395 (1928)). "[G]reat and irreparable injury ... [is] not such an injury as is usually suffered and sustained by a losing litigant upon a trial of his cause in a court having jurisdiction thereof, i.e., a mere failure to succeed in that litigation, followed by the loss of that which success might have brought him...." *Osborn v. Wolfford*, 239 Ky. 470, 39 S.W.2d 672, 673 (1931) (internal quotation marks omitted).

 Here, Appellant's claimed injury is that he does not have custody of his children and that his visitation time with them is more limited than he deserves. This injury is no different from the result in every custody case in which a parent does not get what he or she requested. While the Court recognizes Appellant's desire to spend more time with his children and to have more control over important decisions about their lives, his claimed injuries are simply not the kind of injuries that justify issuing an extraordinary writ. Indeed, if they were, the appellate courts would be awash with writ petitions in domestic cases. Yet, as we have noted time and again, the extraordinary writs are no substitute for the ordinary appellate process, and the interference with the lower courts required by such a remedy is to be avoided whenever possible. *See, e.g., Bender*, 343 S.W.2d at 800 ("Relief by way of prohibition or mandamus is an extraordinary remedy and we have always been cautious and conservative both in entertaining petitions for and in granting such relief. This careful approach is necessary to prevent short-circuiting normal appeal procedure and to limit so far as possible interference with the proper and efficient operation of our circuit and other courts. If this avenue of relief were open to all who considered themselves aggrieved by an interlocutory court order, we would face an impossible burden of nonappellate matters."); *Cox v. Braden*, 266 S.W.3d 792, 795–96 (Ky.2008).

Appellant has the right to appeal all final rulings of the trial court on the bias, fraud, and conspiracy issues, and he has in fact filed appeals on a number of the court's orders. There is nothing in this case that prevents the Court of Appeals from reviewing each of Appellant's claims and reversing any erroneous decisions by the trial court—all in the ordinary appellate course. For these reasons, a writ is not an available remedy for Appellant's claims that the trial court was biased against him and that the court erred in refusing to disqualify the guardian ad litem and the opposing counsel. Therefore, this Court does not reach the merits of Appellant's bias, conspiracy, and fraud claims.

### 2. *The $7,500 Bond.*

 Appellant also complained about the trial court's January 25, 2011 order requiring him to post a $7,500 bond in order to file any additional motions. In

his writ petition and brief to this Court, Appellant vigorously objected to the bond, devoting several pages of each document to explaining why the bond was unfair and inappropriate. However, his discussion of this issue focused on the bond as an example of Judge George's alleged bias against him. But Appellant also made the bare argument that the bond violated his due process rights, rights of access to the courts, and Eighth Amendment rights.

Appellant's legal claims about the bond were presented in a somewhat disorganized fashion. In his writ petition, Appellant first discussed the bond on pages 8 through 12. He argued that the bond was unfair because he was indigent and could not afford to pay it, and so he was prevented from presenting any further issues to the court. He explained that the bond was inappropriate because Stanley had filed approximately the same number of motions as he had during the same time period. His legal argument was as follows: "The [trial court] knows that the Appellant essentially has 'indigent' status and cannot afford to pay a $7,500 bond. The Appellant contests that not only is this a deprivation of his rights of Due Process and Free Access to the Courts, but is designed to prolong the litigation in forcing the Appellant to take remedies in the Court of Appeals, a much longer and costly process." In this section of his writ petition, he did not expressly request that the bond order be vacated, and the focus of his discussion of the bond was that the bond was evidence of the judge's bias, and a basis for his removal: "Even if this Court vacated the Order requiring the Petitioner to pay a $7,500 bond, [Judge George] would deny all the motions he filed, essentially achieving the same goal."

Later in his writ petition to the Court of Appeals, Appellant briefly returned to the bond issue and argued that it was a viola-tion of his Eighth Amendment rights. Here, he expressly stated, as part of the removal of the judge, that the bond order should be vacated: "By ordering the Petitioner to pay fines that he cannot afford, such as the $7,500 bond, Judge George is in violation of Petitioner's Eight[h] Amendment rights under the Constitution. Therefore, the order regarding the bond should be vacated." These two sentences reflect the entirety of Appellant's Eighth Amendment argument, and he did not expressly ask for a writ to set aside the bond at any point.

The Court of Appeals construed Appellant's discussion of the bond as a request for relief separate from his requests to disqualify Judge George, the guardian ad litem, and Stanley's counsel. The Court of Appeals addressed the issue on the merits by examining how other jurisdictions have handled pre-filing restrictions like the bond in this case. It ultimately held, "The order requiring a bond is reasonably limited in scope so as not to deprive petitioner meaningful access to the court. It cannot therefore form the basis for extraordinary relief."

However, this Court disagrees that Appellant sought specific writ relief from the bond order because he did not include any discussion of it in his introductory paragraph to his writ petition, in the "Request for Relief" section of his petition, or in other supplemental documents filed with the Court of Appeals. Since writs are an extraordinary remedy, a petitioner must clearly state the relief he is requesting and the grounds for that relief with sufficient specificity to allow the Court to definitively state its basis for granting or denying a writ. In particular, Appellant appears to have dropped his Eighth Amendment argument on appeal to this Court, which was the one place where he actually stated that the bond order should be vacated. Appel-

lant did not do that here, and this Court will not construe a request for relief or the grounds for a writ on vague statements that are argued to show another purpose. The Appellant is thus not entitled to a writ regarding the bond order, but for these reasons rather than those stated by the Court of Appeals.

### III. Conclusion

For the reasons stated above, the Court of Appeals is affirmed, but on other grounds relating to the bond order issue.

All sitting. MINTON, C.J.; ABRAMSON, CUNNINGHAM, NOBLE, SCHRODER and VENTERS, JJ., concur. SCOTT, J., concurs in result only. NOBLE, J., also concurs by separate opinion in which SCOTT, J., joins.

NOBLE, J., concurring:

I concur with the majority that Appellant did not frame his writ petition as a request for a writ granting separate relief on the bond order. But while he did not request it with sufficient particularity, it is clear to me that the Appellant did intend for the Court to set aside the bond order. Because the writ process is highly specific, and is an extraordinary remedy, I do agree that the Court should not address only a part of Appellant's argument that was made primarily to argue that the trial court was biased and should be removed.

As discussed above, Appellant presented several legal arguments to the Court of Appeals for why the trial court should not have issued the bond, and he made reference to vacating the order. At one point in his petition, he directly requested that the order be vacated, and at another, he discussed the possibility of the court vacating the order but stated that it would not solve the underlying problem of Judge George's alleged bias against him. Appellant repeated most of these arguments verbatim in his brief to this Court, although he appears to have dropped his claim under the Eighth Amendment. But, even though he did not properly make the bond order the subject of the writ, I believe it is appropriate to comment on that order.

The trial court's order was as follows:

[T]he Court orders Mr. Lee to post a $7,500 bond effective immediately, which shall be held with the clerk. This bond is to ensure that the costs of the proceedings and any future award of attorney fees will be met. No motions will be called or taken under submission until the bond is posted, unless the Court orders otherwise.

Thus it appears that during the pendency of the appeal, Appellant would be barred from filing motions that might be meritorious without posting a significant bond. And there is some danger that such motions could become moot by the time the bond was lifted at the end of the appellate process. As an example, with the bond requirement in place, Appellant could be prevented from filing a meritorious emergency motion dealing with some issue that needed to be addressed right away simply because he could not come up with the $7,500 bond in time.

Once a petitioner has shown that he has suffered an injury for which there is no adequate remedy on appeal, he will usually have to demonstrate that "great and irreparable injury" will result if the petition for a writ is not granted. *Bender*, 343 S.W.2d at 801. In the alternative, he may show that the case falls within the class of "special cases," for which the required showing is that the lower court's error will lead to "a substantial miscarriage of justice" and correction of the error is necessary "in the interest of orderly judicial administration." *Id.*

Appellant has not demonstrated that he will suffer a specific irreparable injury, but this case could be analyzed under the "special cases" category. When a court finds that a writ action falls within the special eases category, "the court is recognizing that if it fails to act the administration of justice generally will suffer the great and irreparable injury." *Id.* Here, the imposition of the bond implicates Appellant's right to access to the courts.

But while a litigant may be subject to sanctions *after the fact* for filing frivolous or vexatious pleadings or motions, CR 11, there are few pre-filing requirements. The trial court in this case imposed the requirement that Appellant pay a large bond *before* filing any additional motions or actions. But the Appellant has been allowed to proceed as an indigent.

The Court of Appeals held that the $7,500 bond was "reasonably limited in scope so as not to deprive petitioner meaningful access to the court," relying on federal cases that approved similar pre-filing restrictions. But only a handful of courts have used the pre-filing restriction that is being used in this case: requiring a litigant to post a bond before any more filings will be accepted. *E.g., Student Loan Marketing Association v. Hanes,* 181 F.R.D. 629, 638 (S.D.Cal.1998) (requiring a $5,000 bond because of "frivolous and impertinent legal arguments and conclusory factual assertions not supported by the record or any sworn statement"); *Washington v. Alaimo,* 934 F.Supp. 1395, 1400 (S.D.Ga. 1996) (requiring a $1,500 "contempt bond" because of many frivolous and vulgar motions). The use of a "contempt bond" or "Rule 11 bond" appears to be unusual but not completely unprecedented in other jurisdictions.

The question then would be whether this type of bond is an "appropriate sanction" available to Kentucky courts to be used against *pro se* litigants. Under CR 11, by signing a document filed with the court, a party affirms that the pleading or motion is grounded in fact and law and that it is not being filed for "any improper purpose," such as harassment, unnecessary delay, or "needless increase in the cost of litigation." The rule applies to both lawyers and self-represented litigants who sign documents filed with the court. If a filing violates this rule, the court "upon motion or upon its own initiative, shall impose upon the person who signed it, a represented party, or both, an *appropriate sanction,* which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion, or other paper, including a reasonable attorney's fee." CR 11 (emphasis added). It should be noted, however, that any sanctions are post-filing, not a prior restraint.

The right of access to the courts is fundamental to our system of justice. Section 14 of the Kentucky Constitution provides: "All courts shall be open, and every person for an injury done him in his lands, goods, person or reputation, shall have remedy by due course of law, and right and justice administered without sale, denial or delay." This provision has appeared in each of Kentucky's Constitutions. Ky. Const. of 1850, art. XIII, § 15; Ky. Const. of 1799, art. X, § 13; Ky. Const. of 1792, art. XII, § 13. (statements of Robert Rodes).

It appears that a Kentucky appellate court has not addressed the use of a "contempt bond," but in cases about similar restrictions, Kentucky courts have recognized the importance of access to the courts. *See Collins v. Combs,* 320 S.W.3d 669 (Ky.2010) (affirming order prohibiting litigant from physically entering certain courts because of his threatening behavior

in the past, but noting that the order did not impede his ability to file pleadings with the court because the clerk was directed to accept pleadings by mail, fax, or email); *Lattanzio v. Joyce,* 308 S.W.3d 723, 726–27 (Ky.App.2010) (reversing trial court's order that litigant could only proceed under supervision of a licensed attorney and recognizing importance of right to represent oneself in court).

Because of the fundamental nature of the right of access to the courts, restrictions on a litigant's ability to file motions must be approached with great caution.

The type of bond issued in this case is wholly *prospective.* The trial court is prejudging Appellant's future motions and determining that they will likely be frivolous or repetitive. However, there is a real possibility that prospective restrictions will foreclose meritorious motions. *See In re McDonald,* 489 U.S. 180, at 187–88, 109 S.Ct. 993, 103 L.Ed.2d 158 (1989) (Brennan, J., dissenting) (dissenting from order prohibiting litigant from filing any more petitions *in forma pauperis* and noting the possibility that such a restriction could close the Court's doors to a litigant with a meritorious claim); *In re Sindram,* 498 U.S. 177, 182, 111 S.Ct. 596, 112 L.Ed.2d 599 (1991) (Marshall, J., dissenting) (dissenting from a similar order and discouraging the Court from "presum[ing] in advance that prolific indigent litigants will never bring a meritorious claim").

There is little doubt that requiring a bond can have a strong deterrent effect. For many *pro se* litigants, a bond requirement would completely bar them from filing any new motions with the court because they could not afford the bond. Placing such a heavy burden on a litigant *before* he has even filed additional motions with the court is in opposition to our history and tradition of keeping the courts' doors open to all.

I recognize that the trial court's order was motivated by its understandable frustration with Appellant's willingness to file repetitive and frivolous motions, with the fact that the $70,000 in attorney fees that had already been awarded to Stanley apparently had no effect on Appellant's approach to the litigation, with the negative effects of Appellant's tactics on his children (such as the interruption of their therapy because of Appellant's unfounded complaints against their therapist), and with the waste of the court's and Stanley's resources.

But it is important to note that the trial court has the ability to respond to any abuses and to protect the court's resources by using other sanctions under CR 11 and the court's contempt powers. For example, the trial court could find that by filing a new frivolous or repetitious motion, Appellant violated CR 11, and the court could impose a monetary fine and hold the Appellant in contempt if he did not pay it.

It may seem easier and cleaner to prevent Appellant from filing any more motions unless a bond is posted. But the right of litigants to present claims to a court, and the danger of foreclosing a meritorious claim must always be considered. The trial courts are well equipped to deal with frivolous filings without the use of a prospective bond requirement. In this case, for example, it appears that the large majority of Appellant's motions were meritless and could be denied outright by the court. Such motions will not take up much of the court's resources.

I have engaged in this discussion because I *do not want future readers of this* case to assume that because this Court has not ordered the bond order in this case to be vacated by a writ that such orders are acceptable. That question remains for an-

other day, but there are clearly legal questions about the propriety of such an order.

SCOTT, J., joins.