**Jesse A. WOOD, IV and L.A.W., a Minor Child, Petitioners**

v.

**Honorable Richard A. WOESTE, Judge, Campbell Family Court, Respondent**

and

**Aliza Hunter, Real Party in Interest**

**NO. 2015–CA–000011–OA**

Court of Appeals of Kentucky.

RENDERED: MAY 1, 2015; 10:00 A.M.

PETITION BY PETITIONERS: Tasha Scott Schaffner, Florence, Kentucky, Theresa M. Mohan, Fort Mitchell, Kentucky

RESPONSE BY REAL PARTY IN INTEREST: J. David Bender, Fort Thomas, Kentucky

BEFORE: JONES, MAZE AND THOMPSON, JUDGES.

THOMPSON, JUDGE:

Petitioner, Jesse A. Wood, IV (father), and L.A.W. (son), through son's guardian ad litem (GAL), filed a petition for a writ to prohibit the family court from conducting a hearing on a motion to temporarily modify primary residential custodian of son to Aliza Hunter (mother), while father was deployed with the Air Force National Guard. Father and son also filed two emergency motions to stay the family court from proceeding with a decision. We grant the writ of prohibition because the family court acted erroneously, there is

no adequate remedy by appeal, and great injustice and irreparable injury have resulted. We deny the emergency motions as moot.

When father and mother divorced in 2005, they were living in Cincinnati, Ohio. Pursuant to an agreed parenting plan, the parties shared joint custody with an alternating schedule. In 2009, after mother moved to Montana, the parties agreed to a modified order making father the primary residential custodian of son for school purposes, with mother exercising timesharing during son's summer vacation and other school breaks.

In 2012, father and son moved to Kentucky and began residing with father's paramour, Jill Markum, and Ms. Markum's children. In 2013, mother violated the parameters of her timesharing by failing to return son at the conclusion of her summer visitation period. Father filed a motion requesting the Campbell Family Court to enforce the Ohio custody orders. Father was granted an ex parte court order to secure son's return.

After son returned, father and mother moved the court to alter their custody and timesharing arrangements arguing the current arrangement was not in son's best interest. Father requested sole decision-making power and mother requested she be made the primary residential parent for school purposes. In an April 28, 2014 order, the family court upheld the existing timesharing arrangement as being in son's best interest.

Father is a reserve member of the Air Force National Guard. In September 2014, father was given notice that he was being returned to active service in October and informed mother of his impending deployment. On October 6, 2014, father was deployed to Afghanistan for 180 days. Son, who was ten-years old at this time, remained in Kentucky in the care of Ms. Markum and his paternal grandparents.

On December 1, 2014, mother filed a motion for temporary primary residential custody in the Campbell Family Court arguing that father's deployment constituted a substantial change in circumstances and the care arrangement made for son in father's absence seriously endangered son's physical, mental, moral or emotional health. Mother requested she be given immediate primary residential custody for the remainder of the school year.

On December 9, 2014, father filed a motion to stay the proceedings for ninety days pursuant to the federal Servicemembers Civil Relief Act (SCRA), and indicated he anticipated being available for court proceedings in mid-April 2015. Father's attached exhibits included: (1) proof that he was serving in active duty as of December 4, 2014; and (2) a letter from his commanding officer that he was involuntarily mobilized on October 6, 2014, and would be unavailable for any court proceedings for a period of 180 days not to include travel or reconstitution.

The GAL filed a memorandum of law pointing out that KRS 403.320(4)(a) mandates that any court-ordered modification of timesharing due in part or in whole to a parent's deployment outside the United States shall be temporary and shall revert back to the previous schedule at the end of deployment. The GAL urged the family court to consider whether it would be in the best interest of son to disrupt his current schedule and require him to adjust to a new school mid-year in another state, when at the conclusion of father's deployment he would be returned to father's residential custody and then need to leave his Montana school to resume the school year at his current school in Kentucky.

After a hearing on this motion on December 19, 2014, the family court denied

the motion. It determined father would not be prejudiced by proceeding and indicated that modification should be granted unless it was proven that granting mother temporary residential custody would seriously endanger son.

On January 5, 2015, the family court heard mother's motion. That same day, father and son filed a joint petition for writ of prohibition and/or mandamus with this Court, along with an emergency motion to stay the family court from proceeding. Father argued he and son would be irreparably harmed through failure to grant the stay because he could not effectively assist his counsel in defending against mother's motion or provide relevant information to help the GAL represent son's interest without having the opportunity to provide detailed information about son's prior maladjustment upon traveling to Montana for visitation, high anxiety level, prior poor adjustment to changing schools, educational accommodations, adjustment to his current home, father's own wishes, mother's involvement in son's life, and the arrangements that had been made for son's care while deployed, as well as other relevant matters.

While the family court acknowledged receipt of the petition for writ, it stated in the absence of an order from this Court, it was obligated to continue with the scheduled hearing on mother's motion. The family court proceeded to hear testimony on January 6, 2015, and announced it would likely have a decision before the end of the day. Therefore, also on January 6, 2015, father and son filed a renewed emergency motion to stay the family court from proceeding arguing that father and son would suffer irreparable harm and grave injustice if the stay was not granted.

■■■ On January 6, 2015, the family court ordered that son reside with mother in Montana and designated her as temporary residential custodian until father's return from deployment. The family court reasoned mother's custodial rights needed to be enforced in father's absence unless son would be harmed by living with mother in Montana.[1] In making this decision, the family court determined father could not be the physical custodian of son while deployed, father could not unilaterally designate the paternal grandfather as custodian of the child knowing mother had joint custody rights, father's substantive rights would not be altered from a temporary order, father's attorney adequately represented father's interests, the SCRA could not be applied to deny mother's custodial rights and the SCRA did not apply where father had appeared through counsel. Father filed an appeal.[2]

1. We note that the family court erred in failing to apply the best interest standard pursuant to KRS 403.320(3) as made applicable to modifications of timesharing between joint custodians by *Pennington v. Marcum,* 266 S.W.3d 759, 765 (Ky.2008). While KRS 403.320(4) does contemplate that the active duty deployment may be part of the basis for temporarily modifying timesharing, this provision does not alter the applicable best interest standard contained in KRS 403.320(3). The single event of a service member, who is the primary residential custodian, being deployed does not determine that modification is appropriate and the child should be placed with the other custodial parent. *Koskela v.*

*Koskela,* No. 2011–CA–000543–ME, 2012 WL 601218, 9–10 (Ky.App.2012) (unpublished). Instead, the family court must consider other factors to determine whether modification is in the best interest of the child, such as: "How long will [father's] deployment last and how far away will he be sent? If the deployment is for a relatively short period of time, is it in the best interest of the [child] to uproot [him] from [his] school[ ] and community?" *Id.* at 9.

2. We do not address whether father can properly appeal from a temporary modification of timesharing.

■ An extraordinary writ may be granted upon a showing that "the lower court is acting or is about to act erroneously, although within its jurisdiction, and there exists no adequate remedy by appeal or otherwise and great injustice and irreparable injury will result if the petition is not granted." *Hoskins v. Maricle*, 150 S.W.3d 1, 10 (Ky.2004). Father has made such a showing to merit granting the petition for a writ of prohibition.

The SCRA, which also applies to Kentucky National Guard members through KRS 38.510, has the following purposes:

(1) to provide for, strengthen, and expedite the national defense through protection extended by this Act [said sections] to servicemembers of the United States to enable such persons to devote their entire energy to the defense needs of the Nation; and

(2) to provide for the temporary suspension of judicial and administrative proceedings and transactions that may adversely affect the civil rights of servicemembers during their military service.

50 App. U.S.C. § 502.

The SCRA directly applies to child custody proceedings to stay an action for a period of not less than ninety days if the service member properly provides a letter explaining why service requirements prevent the service member from appearing and when he will be able to appear, and a letter from his commanding officer stating that his military duty prevents his appearance and that leave is not authorized. 50 App. U.S.C. § 522(a), (b). The SCRA uses mandatory language to require a stay under such circumstances: "the court ... shall, upon application by the service member, stay the action[.]" 50 App. U.S.C. § 522(b)(1).

■ In interpreting Section 522, our sister courts have held the SCRA "leaves no room for judicial discretion." *Hernandez v. Hernandez*, 169 Md.App. 679, 690, 906 A.2d 429, 435 (2006) (footnote omitted). If a service member complies with the requirements for a stay, it is mandatory that the trial court grant a stay. *In re Amber M.*, 184 Cal.App.4th 1223, 1230, 110 Cal. Rptr.3d 25, 30 (2010); *In re A.R.*, 170 Cal.App.4th 733, 743, 88 Cal.Rptr.3d 448, 456 (2009); *Hernandez*, 169 Md.App. at 690, 906 A.2d at 435–36.

The Soldiers' and Sailors' Civil Relief Act, the SCRA's predecessor act, similarly contained mandatory language requiring an action "shall ... be stayed" if properly applied for by a person in military service, but added additional discretionary language: "unless, in the opinion of the court, the ability of plaintiff to prosecute the action or the defendant to conduct his defense is not materially affected by reason of his military service." 50 App. U.S.C. § 521 (1990). However, even with this discretion, the Supreme Court opined that the Act was "to be liberally construed to protect those who have been obligated to drop their own affairs to take up the burdens of the nation" and stays were "not to be withheld on nice calculations as to whether prejudice may result from absence, or absence result from the service. Absence when one's rights or liabilities are being adjudged is usually prima facie prejudicial." *Boone v. Lightner*, 319 U.S. 561, 575, 63 S.Ct. 1223, 1231, 87 L.Ed. 1587 (1943).

The limited discretion trial courts had under the Soldiers' and Sailors' Civil Relief Act to deny a stay was eliminated by the SCRA, which omitted the language granting such discretion. *Hernandez*, 169 Md. App. at 690 n. 3, 906 A.2d at 435 n. 3. Therefore, the dissent errs in its conclusion that the trial court had discretion to

deny father's properly supported motion for an automatic stay by relying exclusively on cases interpreting the Soldiers' and Sailors' Civil Relief Act. Accordingly, because father fully complied with the Section 522 requirements for a stay, the family court erred in failing to grant it.

■ The injury in this case is real and irreparable. First, son is being relocated during a school year without consideration of whether a move to a distant state is in son's best interest. A future appeal cannot possibly rectify any damage caused to son by the court's order.

Likewise, father's injuries are irreparable. While serving his country, father was unable to appear and oppose mother's motion. The purpose of the SCRA is to permit service members to "devote their entire energy to the defense needs of the Nation" by temporarily suspending judicial proceedings, including custody proceedings. 50 App. U.S.C. § 502 Holding a custody hearing in father's absence after he properly filed a motion for an automatic stay directly contravenes the stated purpose of the SCRA. Even if father will ultimately resume his role as residential custodian, the violation of the SCRA has already caused the harm sought to be prevented by its enactment which cannot be remedied on appeal.

There may be emergency situations in which family courts must act quickly to protect children through temporary orders and an automatic stay would not be appropriate, such as if the caretakers an absent residential custodian military parent has selected are abusive or otherwise unfit. When such allegations are made, a family court may need to hold a hearing to decide if temporary alterations to timesharing are necessary to protect children before imposing the automatic stay. When applicable, such temporary orders should carefully be drafted to address the immediate safety of children, be of limited duration and designed to protect service members from prejudice. However, such a situation was not present here; the family court found that Ms. Markum and the grandparents were acceptable custodians and son was well taken care of in Kentucky.

Therefore, we grant the writ of prohibition and order the family court to return son as soon as practical from Montana to his home in Kentucky as to avoid further disruption to the child's life and thereupon begin the ninety day mandatory stay under the SCRA. Upon expiration of the stay, if father remains deployed and the family court determines that a further stay would not be appropriate under the SCRA, the family court should consider the best interest of son in determining whether mother should become his temporary residential custodian.

The petitioners having filed a petition for writ of prohibition; IT IS HEREBY ORDERED the petition for writ of prohibition is hereby GRANTED. The motions for emergency relief are hereby denied as moot.

JONES, JUDGE, CONCURS.

MAZE, JUDGE, DISSENTS WITH SEPARATE OPINION.

MAZE, JUDGE, DISSENTING:

I respectfully dissent from my colleagues' conclusion that it is necessary and proper to grant the Writ of Prohibition filed by the Father. Kentucky law has consistently held that before an extraordinary writ of prohibition may be issued, it must be shown either that:

(1) The lower court is proceeding or is about to proceed outside its jurisdiction and there is no remedy through an application to an intermediate court; or (2) that the lower court is acting or is about

to act erroneously, although within its jurisdiction, and there exists no adequate remedy by appeal or otherwise and great injustice and irreparable injury will result if the petition is not granted.

*Hoskins v. Maricle,* 150 S.W.3d 1, 10 (Ky. 2004).

Certainly there cannot be any dispute that the Campbell Family Court was acting within its jurisdiction. The focus, therefore, has to be on whether the lower court was acting erroneously, whether there exists no adequate remedy by appeal, and whether irreparable injury will result if the petition is not granted. The facts of this case do not support any of these findings.

It is important to remember how this matter arrived before this Court and what legal hearing the Petitioner (Father) was trying to prevent. The Father is a member of the military who was deployed in October of 2014. He and the Real Party in Interest, (the Mother), enjoyed joint custody of their son with the Father having custodial responsibility during the school year. Prior to father's deployment he unilaterally designated his father, the child's paternal grandfather, as the child's caretaker during his deployment. Two months after his deployment, Mother filed a motion for custody. In response, father, through counsel, filed a motion to stay the custody proceedings citing the Servicemembers Civil Relief Act contained in 50 App. U.S.C.A. § 501, *et seq.*

The Family Court denied the motion to stay the proceedings and set a hearing for January 5, 2015. On the date of the custodial hearing, Father filed this present petition for Writ of Prohibition in this Court. The trial court was aware of the filing, but conducted the hearing in the absence of any contrary order from this Court. It should be noted that, at the custodial hearing, the Father's attorney and the paternal Grandfather were also present and were given an opportunity to defend.

On January 6, 2015, Father filed an emergency motion in this Court to prohibit the Family Court from entering an order following the hearing. But again, with no forthcoming order, the Family Court entered its order on January 6, 2015, granting temporary primary custody to Mother. Father filed a notice of appeal on February 3, 2015, from the order granting temporary custody to the Mother.

As an initial matter, the Father has not clearly shown that the Family Court was acting erroneously by denying a stay of proceedings under the Servicemembers Civil Relief Act. The applicable stay provisions of the Act are set out in 50 App. U.S.C.A. § 522(b) as follows:

(b) Stay of proceedings

(1) Authority for stay

At any stage before final judgment in a civil action or proceeding in which a servicemember described in subsection (a) is a party, the court may on its own motion and shall, upon application by the servicemember, stay the action for a period of not less than 90 days, if the conditions in paragraph (2) are met.

(2) Conditions for stay

An application for a stay under paragraph (1) shall include the following:

(A) A letter or other communication setting forth facts stating the manner in which current military duty requirements materially affect the servicemember's ability to appear and stating a date when the servicemember will be available to appear.

(B) A letter or other communication from the servicemember's commanding officer stating that the servicemember's current military duty prevents appearance and that military leave is not au-

thorized for the servicemember at the time of the letter.

The majority takes the position that the stay is mandatory once the servicemember properly invokes the Act. But in interpreting the predecessor version of the Act, the United States Supreme Court reached a contrary conclusion, holding that the Act cannot be construed to require a continuance on a mere showing that the applicant was in military service at the time of the proceeding. *Boone v. Lightner*, 319 U.S. 561, 568, 63 S.Ct. 1223, 1226, 87 L.Ed. 1587 (1943). Rather, a trial court has the discretion to require the applicant to prove prejudice if the stay is not granted.

The Act makes no express provision as to who must carry the burden of showing that a party will or will not be prejudiced, in pursuance no doubt of its policy of making the law flexible to meet the great variety of situations no legislator and no court is wise enough to foresee. We, too, refrain from declaring any rigid doctrine of burden of proof in this matter, believing that courts called upon to use discretion will usually have enough sound sense to know from what direction their information should be expected to come. One case may turn on an issue of fact as to which the party is an important witness, where it only appears that he is in service at a remote place or at a place unknown. The next may involve an accident caused by one of his family using his car with his permission, which he did not witness, and as to which he is fully covered by insurance. Such a nominal defendant's absence in military service in Washington might be urged by the insurance company, the real defendant, as ground for deferring trial until after the war. To say that the mere fact of a party's military service has the same significance on burden of persuasion in the two contexts would be to put into the Act through a burden of proof theory the rigidity and lack of discriminating application which Congress sought to remove by making stays discretionary. We think the ultimate discretion includes a discretion as to whom the court may ask to come forward with facts needful to a fair judgment.

*Id.* at 569–70, 63 S.Ct. at 1228–29.

Since *Boone v. Lightner,* the overwhelming weight of authority has consistently recognized the broad discretion vested in trial courts to determine whether to grant a stay under the Act. *See, e.g., In re Burrell, Bkrtcy.,* 230 B.R. 309 (Bankr.E.D.Tex. 1999); *Shelor v. Shelor,* 259 Ga. 462, 383 S.E.2d 895 (1989); *Bond v. Bond,* 547 S.W.2d 43 (Tex.Civ.App.1976); *Tabor v. Miller,* 389 F.2d 645 (3d Cir.1968); *Slove v. Strohm,* 94 Ill.App.2d 129, 236 N.E.2d 326 (Ill.App.1968); *Runge v. Fleming,* 181 F.Supp. 224 (N.D.Iowa 1960); *Cadieux v. Cadieux,* 75 So.2d 700 (Fla.1954); *Sullivan v. Storz,* 156 Neb. 177, 55 N.W.2d 499 (1952); *State ex rel. Stenstrom v. Wilson,* 234 Minn. 570, 48 N.W.2d 513 (1951); *Huckaby v. Oklahoma Office Bldg. Co.,* 201 Okla. 141, 202 P.2d 996 (1949); *Rauer's Law & Collection Co. v. Higgins,* 76 Cal. App.2d 854, 174 P.2d 450 (1946); *State v. Goldberg,* 161 Kan. 174, 166 P.2d 664 (1946); *People ex rel. Flanders v. Neary,* 113 Colo. 12, 154 P.2d 48 (1944); *Van Doeren v. Pelt,* 184 S.W.2d 744 (Mo.App. 1945); *Gross v. Williams,* 149 F.2d 84 (8th Cir.1945); and *Konstantino v. Curtiss–Wright Corporation,* 52 F.Supp. 684 (W.D.N.Y.1943). Even prior to *Boone v. Lightner,* Kentucky's highest court also recognized the extent of the trial court's discretion in granting a stay. *Fennell v. Frisch's Adm'r,* 192 Ky. 535, 234 S.W. 198 (1921).

In the present case, the trial court held a hearing and denied the motion for a stay.

The trial court found that the Father's interests were adequately protected by counsel and by his power of attorney (Grandfather). Both were present at the January 5, 2015 hearing, presented evidence for Father and cross-examined witnesses. There is no suggestion in the motion that· Father was prevented from defending the proceeding. Under the circumstances, the trial court had the discretion to deny the Father's motion for a stay. And given the limited record before us, I do not believe it is appropriate to disturb that finding when ruling on a writ.

But even if we were to find an abuse of discretion at this point, I disagree with the majority that the Father lacks an adequate remedy by appeal. The trial court conducted a temporary custody hearing and entered an order granting temporary primary residential custody to the Real Party in Interest. It is my understanding that post-decree orders that modify child custody are final and appealable. *Gates v. Gates,* 412 S.W.2d 223 (Ky.1967).

The Family Court made two significant findings in its January 6, 2014 order: (1) The Father's unilateral designation of the paternal grandfather as caretaker of the child cannot defeat the Mother's joint custodial status and (2) the Father simply cannot be the physical custodian of the child while he is deployed. I also note that the trial court's order provided that the change of joint custody would only be temporary and residential custody would revert back to the Father on his return. These findings are on appeal before this very Court. Under Kentucky law, a writ cannot be used as a substitute for an appeal. *National Gypsum Co. v. Corns,* 736 S.W.2d 325, 326 (Ky.1987). Therefore, I am of the opinion that the Father has failed to demonstrate the lack of an adequate remedy by appeal.

And most importantly, I disagree with the majority that a disputed child custody determination amounts to irreparable injury. In *Lee v. George,* 369 S.W.3d 29 (Ky. 2012), our Supreme Court stated:

This injury is no different from the result in every custody case in which a parent does not get what he or she requested. While the Court recognizes Appellant's desire to spend more time with his children and to have more control over important decisions about their lives, his claimed injuries are simply not the kind of injuries that justify issuing an extraordinary writ. Indeed, if they were, the appellate courts would be awash with writ petitions in domestic cases. Yet, as we have noted time and again, the extraordinary writs are no substitute for the ordinary appellate process, and the interference with the lower courts required by such a remedy is to be avoided whenever possible.

*Id.* at 34.

I fully agree with the trial court that the Servicemembers Civil Relief Act does not alter the custodial rights of parents. In this case, Father and Mother each have joint custody of the child. There is no dispute that the Mother is a fit and proper person to have custody. And in the Father's absence, the Mother's rights as a joint custodian must take precedence over any non-parent. *Pennington v. Marcum,* 266 S.W.3d 759, 763 (Ky.2008).

The majority suggests that that the trial court's order causes irreparable injury due to the disruptive effect on this child's life. I have no doubt that even a temporary move to Montana may cause significant distress to this child, who has difficulty adapting to new situations. However, the trial court noted that the Mother has access to support services in Montana to assist in the child's adjustment during the period while Father is deployed overseas.

And more to the point, any disruption to the child has already occurred. By granting this writ, this Court is directing that the child be returned immediately to Kentucky and placed in the physical custody of a non-parent. We are not correcting a wrong – we are simply making a difficult situation even harder for the young man who is the subject of this dispute. I am unwilling to be a part of such a result.

Accordingly, I dissent.